In re: Oliver L. NORTH, et al.
(Walsh Show Cause Order).

Division No. 86–6.

United States Court of Appeals,
District of Columbia Circuit.

Dec. 1, 1993.

Before: SENTELLE, Presiding, BUTZNER and SNEED, Senior Circuit Judges.

## ORDER DEFINING FURTHER DUTIES OF THE INDEPENDENT COUNSEL

PER CURIAM.

On October 21, 1993, counsel for former President Ronald W. Reagan filed with this Court the "Suggestion that the Court Exercise its Power to Terminate the Office of Independent Counsel;" and,

On November 2, 1993, having considered the Suggestion of former President Reagan, the Court entered its order directing the Independent Counsel to show cause why the Court should not order that his office be terminated except for the performance of the "ministerial" function contemplated in 28 U.S.C. § 594(h)(2), and upon the performance of that said function the office be terminated entirely; and,

On November 9, 1993, the Independent Counsel filed his response to the show cause order, inclusive of "the request of the Independent Counsel for direction as to the scope of his residual noninvestigative and nonprosecutorial authority and duties relating to the Final Report after he has terminated his investigation pursuant to 28 U.S.C. § 596(b)(1)."

For the reasons more fully set forth in the opinion filed contemporaneously herewith, it is

(1) ORDERED that the Independent Counsel, subject to further order of this Court, continue his office only to the extent necessary or appropriate to fulfill his duties relating to his Final Report, specifically the final submission of such Report inclusive of the statutory appendix consisting of the comments authorized by this Court in accordance with provisions of 28 U.S.C. § 594(h)(2).

(2) To the extent necessary or appropriate to the purposes of this order, this Independent Counsel shall perform the noninvestigative and nonprosecutorial tasks remaining of his statutory duties as required to conclude the functions of his office as set forth in decretal paragraph (l).

Opinion concurring in part and dissenting in part filed by Senior Circuit Judge BUTZNER.

PER CURIAM:

On November 2, 1993, we issued a show cause order directing the Independent Counsel in this matter to show cause why the Court should not order his office "terminated except for the performance of the ministerial function contemplated in 28 U.S.C. § 594(h)(2), and upon performance of that function, the office be terminated entirely." That order was prompted by the suggestion of former President Ronald W. Reagan, filed October 21, 1993, that the Court terminate the Independent Counsel's Office pursuant to 28 U.S.C. § 596(b)(2). Upon review of applicable law, we determined that the suggestion was not without merit and therefore entered the show cause order. This opinion will, of necessity, in part republish the contents of the memorandum accompanying the show cause order.

As we noted in that memorandum, the Independent Counsel Act, 28 U.S.C. § 596(b)(2) provides that the Court may terminate the office

at any time, on the ground that the investigation of all matters within the prosecutorial jurisdiction of such independent counsel or accepted by such independent counsel ... and any resulting prosecutions, have been completed or so substantially completed that it would be appropriate for the Department of Justice to complete such investigation and prosecutions.

Thus we determined that the question for the Court was whether those conditions for termination had been met, that is "that the investigation of all matters within the prosecutorial jurisdiction of [the] Independent Counsel ... and any resulting prosecutions, have been completed or so substantially completed, that it would be appropriate for the Department of Justice to complete" them. *Id.* In the preliminary analysis underlying the show cause order, we noted that in September of 1992, the Independent Counsel

reported to this Court that the investigation was complete "barring unforeseen developments at the upcoming trials of Weinberger and Claridge." In December of that same year, President Bush pardoned Weinberger and Claridge thus eliminating the possibility of "unforeseen developments" at trials that would not further proceed.

The Independent Counsel unexpectedly learned on December 11 that President Bush had not produced to the Independent Counsel previously requested diaries allegedly relevant to the matters under investigation. However, thereafter the Independent Counsel reported to the Court that he had obtained the diaries by January 1993 and that "they did not justify reopening the investigation."

We subjected those facts to the light of applicable law providing that:

> An office of independent counsel shall terminate when—
>
> (A) the independent counsel notifies the Attorney General that the investigation of all matters within the prosecutorial jurisdiction of such independent counsel or accepted by such independent counsel under section 594(e), and any resulting prosecutions, have been completed or so substantially completed that it would be appropriate for the Department of Justice to complete such investigations and prosecutions; and
>
> (B) the independent counsel files a final report in compliance with section 594(h)(1)(B).

28 U.S.C. § 596(b)(1). We therefore determined that it appeared, at least for purposes of the show cause stage that the office had reached self-termination except for the remaining acts, which we styled "ministerial," of notifying the Attorney General of the completion of the investigation and prosecution and any further required filing of the Final Report. We further determined that filing is governed by 28 U.S.C. § 594(h)(1)(B) providing that:

> An independent counsel shall
>
> .    .    .    .    .
>
> (B) before the termination of the independent counsel's office under section 596(b),

file a final report with the division of the court, setting forth fully and completely a description of the work of the independent counsel, including the disposition of all cases brought and the reasons for not prosecuting any matter within the prosecutorial jurisdiction of such independent counsel.

We also noted that the filing of the Final Report appeared at first review to be complete as the Independent Counsel had filed with the Court a two volume document together with a classified appendix entitled "Final Report of the Independent Counsel for Iran/Contra Matters." However, we concluded that subdivision (2) of § 594(h) made it appear to the Court that the statute contemplated a further filing of the Final Report inclusive of an appendix consisting of comments entered pursuant to that subdivision. The relevant provision states:

> The division of the court may make any portion of a final report filed under paragraph (1)(B) available to any individual named in such report for purposes of receiving within a time limit set by the division of the court any comments or factual information that such individual may submit. Such comments and factual information, in whole or in part, may, in the discretion of the division of the court, be included as an appendix to the final report.

28 U.S.C. § 594(h)(2). We thus concluded, absent cause shown to the contrary, that a further "ministerial" duty remained as to the filing of the appendix to the Final Report.

We therefore directed that the Independent Counsel should show cause as to why his office should not be terminated save for and upon the occurrence of the ministerial duties of the filing of the Final Report inclusive of the appendix described in subsection (h)(2).

Thereafter, on November 9, 1993, the Independent Counsel filed a response to the show cause order, which in many ways agreed with the conclusions expressed by the Court in the memorandum accompanying the original order, but which essentially requested the Court not to issue an order of termination presently. Rather the Independent

Counsel requested that the Court (1) allow the Independent Counsel to continue with the duties pursuant to 28 U.S.C. § 594(h)(2) and that those be characterized as residual noninvestigative and nonprosecutorial authority duties relating to the filing of the Final Report, eschewing the term "ministerial" in order to avoid possible controversy over the meaning of that adjective; and, (2) enter an order providing direction as to the scope of his residual noninvestigative and nonprosecutorial authority and duties relating to that Final Report after he has terminated his investigation pursuant to 28 U.S.C. § 596(b)(1).

In his response to our show cause order, and in support of his request for the order providing direction as to the scope of his residual duties, the Independent Counsel informed us that he had sent notice to the Attorney General on November 12, 1993, "that his investigation and all related prosecutions pursuant to the [relevant] appointments have been completed." Shortly put, the Independent Counsel agrees with the Court that his remaining duties arise from a statutory obligation to make a further filing of his Report, specifically by filing it inclusive of an appendix of comments of those named therein, as contemplated by section 594(h)(2). He proposes that we, instead of issuing an order of termination, issue an order limiting the further scope of his official activities to duties relating to that specific task. This we do by order of even date herewith.

However, we do not include in our order the delineation of this scope. First, the Independent Counsel has proposed a description of his duties broader than those outlined by us. We have not accepted the invitation to include a broader description, because it appears to the Court that the current order encompasses all remaining duties under the statute, and, should other action by the Independent Counsel be necessary to the fulfillment of the statutory duty, the second decretal paragraph of our order is sufficiently broad to encompass such action. Specifically, the Independent Counsel has asked for the authority to respond to further inquiries from the Court. If that becomes necessary, paragraph 2 provides room for that necessi-

ty, without expanding the ongoing operation to include responses to anyone other than the Court as prayed by the Independent Counsel.

Second, both counsel for President Reagan and Independent Counsel may be engaging in a circumlocution of what really concerns them. It appears to the Court that President Reagan is concerned that the Independent Counsel may intend to file further comments in response to the comments of the persons mentioned in the Report. Our reading of section 594(h) does not include any authority for the Independent Counsel to amend the Report during or after the time set by the division for "comments or factual information" by the individual named. 28 U.S.C. § 594(h)(2). Nor do we assume that the Independent Counsel reads the statute any differently than we. Indeed, it would seem that if the Independent Counsel could amend the Report or add comments of his own thereto, then the individuals named would have a further round of reply before the rights created by section 594(h)(2) would be fully vindicated.

It is the purpose of the Court in omitting the broader language requested by the Independent Counsel to make plain that we do not understand him to be seeking a determination by us that his remaining duties have sufficient scope to include the making of revisions or additions to his prior report, but in what is probably an excess of caution, we wish to make it plain by this opinion that we do not contemplate the scope as being inclusive of that authority so that we do not invite further controversy over that detail.

Similarly, we have not employed the term "ministerial" used in our prior filing. The Independent Counsel fears that this would invoke further exchange of petitions or motions, and this we do not intend to do.

Finally, the Independent Counsel included in his requested order a paragraph providing that the "Independent Counsel shall, as appropriate, continue to seek assistance of other agencies, to seek continuance of security clearances, to contract with private persons, and to expend funds from appropriations heretofore available to him." Again, this request would at least potentially take the con-

tinuing scope of the Independent Counsel outside what we perceive to be the statutory limitations. It may be apparent that the Independent Counsel can expend those funds, where it is necessary to complete the tasks remaining in the completed filing, and if so, our order should be sufficient to recognize that necessity. It is not apparent that the language concerning security clearances and dealing with other agencies states a necessity for that duty; but if it does, it would again appear that the Independent Counsel can do it. If there is doubt as to a specific item, he can raise with us that specific item.

We are particularly reluctant to speak directly to the appropriations question, as that is not a matter within the purview of the controversy now before us, nor one upon which we possess a particular expertise to speak. If there are controversies to be resolved concerning the expenditure of funds, or for that matter, the service of the Independent Counsel as an unpaid volunteer, those can be resolved by appropriate agencies at an appropriate time, and if any action in that regard by this Court is necessary, we can then take that action on a more fulsome record.

*So ordered.*

BUTZNER, Senior Circuit Judge, concurring in part and dissenting in part:

I agree that the Independent Counsel should continue in office to fulfill his duties under the Ethics in Government Act * relating to his final report.

I dissent from the provisions of the court's order and opinion prohibiting the Independent Counsel from responding to comments filed by persons named in his report. We have no statutory authority to impose this prior restraint on the Independent Counsel. Construction of the statute to permit such restraint raises constitutional issues that we should avoid.

I

In accordance with 28 U.S.C. § 596(b)(1)(A) the Independent Counsel has notified the Attorney General that he has completed his investigations and prosecutions. This notice should allay concerns of persons named in the report that the Independent Counsel will launch an investigation or initiate a prosecution on the basis of information contained in their comments.

Notification to the Attorney General does not terminate the office of Independent Counsel. The Independent Counsel must file a final report before his office is terminated. *See* § 596(b)(1)(B).

Section 594(h)(1)(B) prescribes the content of the report. This section, when read with § 594(h)(2) regarding the court's authority to disclose the report to Congress and the public, evidences congressional intent to make the report a public record except in unusual circumstances. The report must set forth "fully and completely a description of the work of the independent counsel, including the disposition of all cases brought, and the reasons for not prosecuting any matter within the prosecutorial jurisdiction of such independent counsel." § 594(h)(1)(B). To assure that the report is full and complete and to afford a measure of fairness to persons mentioned in the report, Congress authorized the court to furnish relevant portions of the report to such persons. Within a time limit set by the court, these persons may submit "comments and factual information" that the court may include as an appendix to the report. 28 U.S.C. § 594(h)(2). The court has authorized comments, and they will be published in an appendix prepared by the Independent Counsel.

The Independent Counsel's authority to respond to comments is part and parcel of his report. Some of the comments are ad-

---

* The Ethics in Government Act of 1978, Pub.L. No. 95–521, tit. VI, § 601(a), 92 Stat. 1867, provided the original authority for the appointment of a "special prosecutor"—now renamed the Independent Counsel. The Independent Counsel Reauthorization Act of 1987, Pub.L. No. 100–191, 101 Stat. 1293, amended the statute, *see* 28 U.S.C.A. § 591 note (1993). There is, in this instance, no conflict between the old statute and the 1987 amendments with respect to the Independent Counsel's activities at issue. For this reason, I refer to the current codification of the Act. Independent Counsel Walsh holds both an appointment by the Special Division pursuant to the 1978 Act and a parallel appointment by the Attorney General.

dressed to the Independent Counsel requesting him to correct either factual information contained in his report or the inferences that he has drawn from the facts. To deny the Independent Counsel an opportunity to respond to these requests either by correcting the report or explaining why he has not done so denies both Congress and the public insight into those portions of the report in question. Some of the comments may raise new matters apparently pertinent to the Independent Counsel's actions. The Independent Counsel should be able to respond, explaining that the omission of these matters was inadvertent or that their inclusion was unnecessary.

I do not share the notion that the public interest is served by denying the Independent Counsel the opportunity to respond because persons mentioned in the report may wish, in turn, to file additional comments. In both civil and criminal proceedings, courts permit response. A proponent speaks first; the opponent then speaks, and the proponent responds. This practice has been codified by the Rules. *See, e.g.,* Fed.R.Crim.P. 29.1; Fed.R.App.P. 34(c); Sup.Ct.R. 28.2. It is the orderly way to conduct a discussion, a debate, or a trial. I see no reason why we should depart from it. We have already given the persons named in the report time to comment. I deem it highly unlikely that the Independent Counsel will unduly delay release of the report should he decide to respond. The court in its discretion may permit further comment if it deems fairness to the commentator or the public interest will be served. In any event, persons who wish to make further comments will be free to do so after the report and the appendix have been released.

Prohibiting the Independent Counsel from responding to comments that warrant response will defeat the congressional directive that the Independent Counsel report his actions "fully and completely." Congress and the public will be the losers. So much for the practical reasons why responding enables the Independent Counsel to complete his report—I turn now to the issue whether prohibiting the Independent Counsel from responding complies with the Act.

## II

The Department of Justice has set forth its views about the construction of the Act with reference to the Independent Counsel's authority and responsibility relating to his final report. In a letter to the Independent Counsel from Philip B. Heymann, Deputy Attorney General, dated November 9, 1993, the Department recognized the Independent Counsel's authority to respond to comments. The text of the letter follows:

Thank you for giving the Department of Justice an opportunity to comment on the Order to Show Cause and accompanying Memorandum issued by the Special Division of the District of Columbia Circuit on November 2, 1993.

The Department of Justice believes that the Independent Counsel must continue to represent the United States in any proceedings before the Special Division concerning the Final Report. Only a construction of the statute which recognizes that the Independent Counsel has both the authority and the responsibility to handle all proceedings relating to the Final Report after formally notifying the Attorney General that its investigation is concluded allows a rational and orderly termination of the Office of Independent Counsel. Moreover, the statute establishing the Independent Counsel contemplates that the Department of Justice will play no role in the Final Report. Therefore, *the Independent Counsel is the appropriate party to respond to comments submitted pursuant to section 594(h)* and perform any other functions related to the Final Report.

I would appreciate it if you would make the views of the Department of Justice known to the Special Division of the Court by filing this letter with the Court. (emphasis added).

The Act confers very limited powers on the court with respect to the Independent Counsel. Adherence to these limitations is essential to preserve the constitutionality of the Act. In *Morrison v. Olson,* 487 U.S. 654, 108 S.Ct. 2597, 101 L.Ed.2d 569 (1988), the Supreme Court upheld the constitutionality of the Act. Addressing the argument that the

Act violated the separation of powers doctrine, the Supreme Court pointed out that the Act conferred on this court only limited power. Pertinent to the issue now before us, the Supreme Court said that this court "has no power to supervise or control the activities of the counsel." 487 U.S. at 695, 108 S.Ct. at 2621. Referring to this court as the Division, the Supreme Court reiterated that the "powers delegated by the statute to the Division are not supervisory...." 487 U.S. at 695, 108 S.Ct. at 2621.

Yet, by denying the Independent Counsel authority to respond to comments, this court is construing the statute as permitting it to exercise supervision and control over the Independent Counsel in performance of his duty to report "fully and completely" his activities pursuant to § 594(h)(1)(B). This court's assumption of power is contrary to the Supreme Court's construction of the statute in *Morrison*. Prohibiting the Independent Counsel from responding raises a serious constitutional issue under the separation of powers doctrine.

To be sure, § 596(b)(2) authorizes this court to terminate an office of Independent Counsel when all matters within its prosecutorial jurisdiction have been completed. The statute then provides: "At the time of such termination the independent counsel shall file the final report required by 594(h)(1)(B)." Several observations are pertinent to this grant of power to this court. Section 594(h)(1)(B) contemplates that the office will not terminate until the report is filed. The statute does not give this court authority to terminate the Independent Counsel's office piecemeal by picking and choosing what duties regarding his report the Independent Counsel shall perform or by ordering how he shall perform them. This court does not have statutory authority to terminate or accelerate termination by exercising supervision or control over the Independent Counsel with respect to the contents of his report. This proposition is so obvious and fundamental that it has found its way into Hornbook law. "The Special Division, in short, should not use the power of termination as a method of supervising the Independent Counsel." John E. Novak & Ronald D. Rotunda, *Con-*

*stitutional Law* 261 (4th ed. 1991) (Hornbook Series). In sum, this court is not empowered under the guise of its termination power to prohibit the Independent Counsel from responding to comments.

Concern about the termination provision prompted the Supreme Court to admonish this court against its casual use. After explaining how the miscellaneous powers of the Division did not conflict with Article III of the Constitution, the Court sounded a note of caution: "We are more doubtful about the Special Division's power to terminate the office of the Independent Counsel pursuant to § 596(b)(2)." *Morrison,* 487 U.S. at 682, 108 S.Ct. at 2614. Pointing out that it is the duty of courts "to construe a statute in order to save it from constitutional infirmities," 487 U.S. at 682, 108 S.Ct. at 2614, the Court construed the Act to place severe limitations on this court: "As we see it, 'termination' may occur only when the duties of the counsel are truly 'completed' or 'so substantially completed' that there remains no need for any continuing action by the independent counsel." 487 U.S. at 682–83, 108 S.Ct. at 2614–15.

Denying the Independent Counsel the option to address the comments to his report is tantamount to terminating a central function of the Independent Counsel's office. As the Court noted in *Morrison,* "the termination provision [of the Ethics in Government Act] was 'intended to serve only as a measure of last resort.'" 487 U.S. at 683 n. 21, 108 S.Ct. at 2615 (quoting *In re Sealed Case,* 838 F.2d 476, 522 n. 13 (D.C.Cir.1988) (Ruth Bader Ginsburg, J., dissenting)). The Supreme Court also noted that the legislative history of the Act counseled caution in that exercise of the power to terminate:

This paragraph provides for the unlikely situation where a special prosecutor may try to remain as special prosecutor after his responsibilities under this chapter are completed.... The drastic remedy of terminating the office of special prosecutor without the consent of the special prosecutor should obviously be executed with caution.

487 U.S. at 683 & n. 21, 108 S.Ct. at 2615 & n. 21 (quoting S.Rep. No. 95–170, p. 75

(1977)). No extraordinary circumstances justify this court's termination of an important function of the Independent Counsel.

When all is said and done, the Independent Counsel may decline to respond to the comments. But whether he responds or not should be his decision and not this court's. To construe the Act otherwise, to assume control and supervision over the Independent Counsel in the discharge of his duties to report, and to terminate his office before he has completed his report raise constitutional issues in the application of the Act that should be avoided. For these reasons, I dissent from the order prohibiting the Independent Counsel from responding to comments.