In re: **MADISON GUARANTY SAVINGS & LOAN ASSOCIATION.**

**Division No. 94–1.**

United States Court of Appeals, District of Columbia Circuit.

Filed Aug. 18, 1999.

Before: SENTELLE, Presiding Judge, FAY and CUDAHY*, Senior Circuit Judges.

Opinion of the Special Division filed PER CURIAM.

Dissenting Opinion filed by Senior Judge CUDAHY.

## ORDER

Pursuant to the Independent Counsel Reauthorization Act of 1994, 28 U.S.C. §§ 591–599 (1994), the court, on its own motion, concludes that termination of the office of Independent Counsel in the above-captioned matter is not currently appropriate under the standard set forth in 28 U.S.C. § 596(b)(2).

## ON TERMINATION OF INDEPENDENT COUNSEL QUESTION

PER CURIAM:

■ 28 U.S.C. § 596(b)(2) empowers the Division of the Court "on its own motion or upon the request of the Attorney General [to] terminate an office of independent counsel ... on the ground that the investigation of all matters within the prosecutorial jurisdiction of such independent counsel ... have been completed or so substantially completed that it would be appropriate for the Department of Justice to complete such investigations and prosecutions." The statute further provides that the Division should enter an appropriate order on its own motion at the end of the first two-year period of the independent counsel investigation, the second two-year period and thereafter at the end of each succeeding year. We have never interpreted this section to empower the Division to supervise independent counsel. Indeed, it could not constitutionally do so. In *Morrison v. Olson*, 487 U.S. 654, 108 S.Ct. 2597, 101 L.Ed.2d 569 (1988), the Supreme Court upheld the constitutionality of the Ethics in Government Act against a challenge that it violated the separation

* Senior Judge CUDAHY dissents from the ORDER.

of powers doctrine precisely because the Division created under the Act "has no power to supervise or control the activities of the counsel." *Id.* at 695, 108 S.Ct. 2597. We have consistently followed the Supreme Court's teaching on this doctrine. *See, e.g., In re North (Walsh Show Cause Order),* 10 F.3d 831, 837 (D.C.Cir., Spec. Div., 1993). Therefore, in the absence of a motion from the Attorney General, or a party having standing to raise an actual case or controversy cognizable by the court under Article III, as in *Walsh Show Cause Order, supra,* we have limited our termination inquiry to request of the independent counsel as to whether the investigation was completed. Where, as in *Walsh Show Cause Order,* there has been a dispute concerning the completion, or even a potential dispute, we have called upon the independent counsel for further filing. Otherwise, we have not engaged in conduct that might have crossed the constitutional barrier into supervision. Nor do we intend to do so today.

■ In the current case, as in prior instances under the statute, the Division has inquired of the independent counsel and received his assurance that his work is ongoing. Having neither the constitutional authority to supervise nor a motion from the Attorney General, nor any Application by any other party having standing to bring before the court an Article III controversy, we have not looked beyond the public record to seek support for this proposition. In this case, the public record offers ample support.

As our dissenting colleague recognizes, this investigation has reached the fifth anniversary of the appointment, a good deal less time than that occupied by the investigation in *In re North* or *In re Pierce,* and has been unusually productive, having resulted, as our colleague recognizes, in the impeachment of a President, as well as twenty-four (24) indictments and sixteen (16) convictions not alluded to by our dissenting colleague. While we cannot, without challenging the border of unconstitu-

tional supervision, inquire as to the precise day-to-day nature of the remaining work, it is quite evident that it involves at least the production of a final report, along with such "residual noninvestigative and nonprosecutorial authority duties relating to the filing of the Final Report," as would normally accompany the winding-down of an investigation of the present scope. *See In re North,* 10 F.3d at 834.

For reasons that are not clear to us, our dissenting colleague would depart from our usual custom and commence supervision in the case of Independent Counsel Starr as has never been done with any other independent counsel. Nothing known to us explains why we should visit upon this particular independent counsel a level of supervision different than that ever before afforded in the absence of some motion by the Attorney General or some other party having the standing to bring a case or controversy within the cognizance of the court rather than an exercise in unconstitutional supervision.

For those reasons, we have today issued an order declining to terminate the Office of Independent Counsel in this matter.

CUDAHY, Senior Circuit Judge, dissenting:

Terminating the office of an independent counsel when his work is completed is one of the most important obligations with which this court is charged. An endless investigation, which the passivity of the majority invites, can serve no possible goal of justice and imposes needless burdens on the taxpayers. The approach advocated by the majority renders the termination provisions of the Independent Counsel Act, 28 U.S.C. § 596(b)(2), a dead letter. The language in *Morrison v. Olson,* 487 U.S. 654, 695, 108 S.Ct. 2597, 101 L.Ed.2d 569 (1988), on which the majority relies may preclude this Division from attempting to "supervise or control" the manner in which an independent counsel carries out his duties. There is certainly no indication, however, that the Supreme Court intended

to nullify the termination provisions of the statute.

I do seem to agree with the majority on certain preliminary questions. First, this Division must make a termination decision. Second, this decision must be based on some information. Third, the Division can request this information from an independent counsel. On the questions of how much information, what kind of information and what sort of decision the available information dictates, I emphatically disagree. The approach advocated by the majority here is in stark contrast to the aggressive performance of this Division in *In re North (Walsh Show Cause Order)*, 10 F.3d 831 (D.C.Cir., Spec. Div., 1993).

The Independent Counsel statute provides that the Division "shall" make a determination, even if on its "own motion." 28 U.S.C. § 596(b)(2). We need not wait for some other party to suggest that the Division exercise its powers of termination (as ex-President Reagan did in *In re North*). The statute also directs that our termination decision be based on specific information: whether an independent counsel's investigations are "completed or so substantially completed that it would be appropriate for the Department of Justice to complete such investigations...." 28 U.S.C. § 596(b)(2). We further know that the Division can, without breaching any constitutional walls that separate powers, request that an independent counsel provide information regarding the status of his investigations so that the Division may determine whether the statutory "conditions for termination [have] been met." *In re North*, 10 F.3d at 832. In fact, in the *North* case, the Division's informational requests of Independent Counsel Lawrence Walsh took the emphatic form of an Order to Show Cause why his investigation should not be terminated. *See id.*

I have sought to have this Division request specific information from the Independent Counsel about further investigative activity that he could usefully undertake and which could not now

properly be turned over to the Department of Justice. My efforts along these lines have been rebuffed. The only word which is available to me of the Independent Counsel's possible investigative prospects are very general representations that such prospects may exist, conveyed in an informal "contact" between the Independent Counsel and the Presiding Judge of this Division. Despite the very high esteem in which I hold the Presiding Judge, I do not believe that vague intimations informally conveyed are an adequate basis for our official action. I strongly believe that the Division needs more information—of the specific kind identified in the statute—in order to make its decision. In any event, based on what I know (or do not know) now, there is a strong case for termination, and it would be very difficult to persuade me otherwise.

This investigation is celebrating its fifth birthday, and it has led to the impeachment of the President of the United States followed by his acquittal by the Senate. This is a natural and logical point for termination, since it is not clear how additional measures against the principal subject of the investigation could be pursued. Nor is there any indication that the Independent Counsel would pursue them—whatever they might be. In addition, there apparently are no pending prosecutions against lesser figures. The past record of the Independent Counsel in procuring indictments and convictions of others implicated in the investigation is certainly of interest but is quite irrelevant to future prospects or legitimate needs at this stage of the process.

From the information at my disposal, I must conclude that there is nothing further to be done, beyond a Final Report, and certainly nothing that cannot properly be turned over to the Department of Justice, as the statute provides. Termination, of course, may be conditional on completion and submission of a Final Report. *See In re North, supra.* I would therefore

terminate the office of this Independent Counsel subject to completion and submission of a Final Report.

For these reasons, I respectfully dissent.