United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Filed August 18, 1999

 Division No. 94-1

 In re: Madison Guaranty Savings 
 & Loan Association

 Division for the Purpose of 
 Appointing Independent Counsels 
 Ethics in Government Act of 1978, As Amended

 ---------

 Before: Sentelle, Presiding Judge, Fay and Cudahy*, 
Senior Circuit Judges. 

 O R D E R

 Pursuant to the Independent Counsel Reauthorization Act 
of 1994, 28 U.S.C. ss 591-599 (1994), the court, on its own 
motion, concludes that termination of the office of Indepen-

__________
 * Senior Judge Cudahy dissents from the ORDER.

dent Counsel in the above-captioned matter is not currently 
appropriate under the standard set forth in 28 U.S.C. 
s 596(b)(2).

 Per Curiam

 For the Court:

 Mark J. Langer, Clerk

 by

 Marilyn R. Sargent

 Chief Deputy Clerk

 United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Filed August 18, 1999

 Division No. 94-1

 In re: Madison Guaranty Savings & Loan Association

 Division for the Purpose of 
 Appointing Independent Counsels 
 Ethics in Government Act of 1978, as Amended

 ---------

 Before: Sentelle, Presiding Judge, and Fay and Cudahy, 
Senior Circuit Judges.

 ON TERMINATION OF INDEPENDENT 
 COUNSEL QUESTION

 Opinion of the Special Division filed Per Curiam.

 Dissenting Opinion filed by Senior Judge Cudahy.

 Per curiam: 28 U.S.C. s 596(b)(2) empowers the Division 
of the Court "on its own motion or upon the request of the 
Attorney General [to] terminate an office of independent 
counsel ... on the ground that the investigation of all matters 
within the prosecutorial jurisdiction of such independent 
counsel ... have been completed or so substantially complet-
ed that it would be appropriate for the Department of Justice 

to complete such investigations and prosecutions." The stat-
ute further provides that the Division should enter an appro-
priate order on its own motion at the end of the first two-year 
period of the independent counsel investigation, the second 
two-year period and thereafter at the end of each succeeding 
year. We have never interpreted this section to empower the 
Division to supervise independent counsel. Indeed, it could 
not constitutionally do so. In Morrison v. Olson, 487 U.S. 
654 (1988), the Supreme Court upheld the constitutionality of 
the Ethics in Government Act against a challenge that it 
violated the separation of powers doctrine precisely because 
the Division created under the Act "has no power to supervise 
or control the activities of the counsel." Id. at 695. We have 
consistently followed the Supreme Court's teaching on this 
doctrine. See, e.g., In re North (Walsh Show Cause Order), 
10 F.3d 831, 837 (D.C. Cir., Spec. Div., 1993). Therefore, in 
the absence of a motion from the Attorney General, or a 
party having standing to raise an actual case or controversy 
cognizable by the court under Article III, as in Walsh Show 
Cause Order, supra, we have limited our termination inquiry 
to request of the independent counsel as to whether the 
investigation was completed. Where, as in Walsh Show 
Cause Order, there has been a dispute concerning the comple-
tion, or even a potential dispute, we have called upon the 
independent counsel for further filing. Otherwise, we have 
not engaged in conduct that might have crossed the constitu-
tional barrier into supervision. Nor do we intend to do so 
today.

 In the current case, as in prior instances under the statute, 
the Division has inquired of the independent counsel and 
received his assurance that his work is ongoing. Having 
neither the constitutional authority to supervise nor a motion 
from the Attorney General, nor any Application by any other 
party having standing to bring before the court an Article III 
controversy, we have not looked beyond the public record to 
seek support for this proposition. In this case, the public 
record offers ample support.

 As our dissenting colleague recognizes, this investigation 
has reached the fifth anniversary of the appointment, a good 

deal less time than that occupied by the investigation in In re 
North or In re Pierce, and has been unusually productive, 
having resulted, as our colleague recognizes, in the impeach-
ment of a President, as well as twenty-four (24) indictments 
and sixteen (16) convictions not alluded to by our dissenting 
colleague. While we cannot, without challenging the border 
of unconstitutional supervision, inquire as to the precise day-
to-day nature of the remaining work, it is quite evident that it 
involves at least the production of a final report, along with 
such "residual noninvestigative and nonprosecutorial authori-
ty duties relating to the filing of the Final Report," as would 
normally accompany the winding-down of an investigation of 
the present scope. See In re North, 10 F.3d at 834.

 For reasons that are not clear to us, our dissenting col-
league would depart from our usual custom and commence 
supervision in the case of Independent Counsel Starr as has 
never been done with any other independent counsel. Noth-
ing known to us explains why we should visit upon this 
particular independent counsel a level of supervision different 
than that ever before afforded in the absence of some motion 
by the Attorney General or some other party having the 
standing to bring a case or controversy within the cognizance 
of the court rather than an exercise in unconstitutional super-
vision.

 For those reasons, we have today issued an order declining 
to terminate the Office of Independent Counsel in this matter.

 Cudahy, Senior Circuit Judge, dissenting:

 Terminating the office of an independent counsel when his 
work is completed is one of the most important obligations 
with which this court is charged. An endless investigation, 
which the passivity of the majority invites, can serve no 
possible goal of justice and imposes needless burdens on the 
taxpayers. The approach advocated by the majority renders 
the termination provisions of the Independent Counsel Act, 
28 U.S.C. s 596(b)(2), a dead letter. The language in Morri-
son v. Olson, 487 U.S. 654, 695 (1988), on which the majority 
relies may preclude this Division from attempting to "super-
vise or control" the manner in which an independent counsel 
carries out his duties. There is certainly no indication, 
however, that the Supreme Court intended to nullify the 
termination provisions of the statute.

 I do seem to agree with the majority on certain preliminary 
questions. First, this Division must make a termination 
decision. Second, this decision must be based on some infor-
mation. Third, the Division can request this information 
from an independent counsel. On the questions of how much 
information, what kind of information and what sort of deci-
sion the available information dictates, I emphatically dis-
agree. The approach advocated by the majority here is in 
stark contrast to the aggressive performance of this Division 
in In re North (Walsh Show Cause Order), 10 F.3d 831 (D.C. 
Cir. 1993).

 The Independent Counsel statute provides that the Division 
"shall" make a determination, even if on its "own motion." 28 
U.S.C. s 596(b)(2). We need not wait for some other party to 
suggest that the Division exercise its powers of termination 
(as ex-President Reagan did in In re North). The statute 
also directs that our termination decision be based on specific 
information: whether an independent counsel's investigations 
are "completed or so substantially completed that it would be 
appropriate for the Department of Justice to complete such 
investigations...." We further know that the Division can, 
without breaching any constitutional walls that separate pow-

ers, request that an independent counsel provide information 
regarding the status of his investigations so that the Division 
may determine whether the statutory "conditions for termi-
nation [have] been met." In re North, 10 F.3d at 832. In 
fact, in the North case, the Division's informational requests 
of Independent Counsel Lawrence Walsh took the emphatic 
form of an Order to Show Cause why his investigation should 
not be terminated. See id.

 I have sought to have this Division request specific infor-
mation from the Independent Counsel about further investi-
gative activity that he could usefully undertake and which 
could not now properly be turned over to the Department of 
Justice. My efforts along these lines have been rebuffed. 
The only word which is available to me of the Independent 
Counsel's possible investigative prospects are very general 
representations that such prospects may exist, conveyed in an 
informal "contact" between the Independent Counsel and the 
Presiding Judge of this Division. Despite the very high 
esteem in which I hold the Presiding Judge, I do not believe 
that vague intimations informally conveyed are an adequate 
basis for our official action. I strongly believe that the 
Division needs more information--of the specific kind identi-
fied in the statute--in order to make its decision. In any 
event, based on what I know (or do not know) now, there is a 
strong case for termination, and it would be very difficult to 
persuade me otherwise.

 This investigation is celebrating its fifth birthday, and it 
has led to the impeachment of the President of the United 
States followed by his acquittal by the Senate. This is a 
natural and logical point for termination, since it is not clear 
how additional measures against the principal subject of the 
investigation could be pursued. Nor is there any indication 
that the Independent Counsel would pursue them--whatever 
they might be. In addition, there apparently are no pending 
prosecutions against lesser figures. The past record of the 
Independent Counsel in procuring indictments and convic-
tions of others implicated in the investigation is certainly of 
interest but is quite irrelevant to future prospects or legiti-
mate needs at this stage of the process.

 From the information at my disposal, I must conclude that 
there is nothing further to be done, beyond a Final Report, 
and certainly nothing that cannot properly be turned over to 
the Department of Justice, as the statute provides. Termi-
nation, of course, may be conditional on completion and 
submission of a Final Report. See In re North, supra. I 
would therefore terminate the office of this Independent 
Counsel subject to completion and submission of a Final 
Report.

 For these reasons, I respectfully dissent.