In re Oliver L. NORTH, et
al. (Omnibus Order).

No. 86–6–G.

United States Court of Appeals,
District of Columbia Circuit.

Decided Jan. 7, 1994.

Before: SENTELLE, Presiding,
BUTZNER and SNEED, Senior Circuit
Judges.

## ORDER

PER CURIAM.

This matter came before the Court on
various motions now pending, and it is the
purpose of this order to dispose of those
motions. The accompanying memorandum
provides the rationale for the order to dis-
close the Report of the Independent Counsel.
As to all other matters, we act in our discre-
tion or for reasons apparent from the face of
the order. It is therefore

ORDERED, ADJUDGED and DE-
CREED that:

(1) all motions to reconsider the release of
the Final Report of the Independent Counsel
are denied,

(2) all motions to release the order are
granted, to the extent previously allowed in
our order of December 3, 1993, releasing all
of the report exclusive of classified material,

(3) the release of the Report shall include
an appendix consisting of the comments of all
persons named therein submitted to the
Court for release, save for those where the
commenter has requested that his comments
not be released,

(4) all motions by movants requesting that
their motions and their submitted material
be filed under seal are allowed,

(5) the motion of one person named to
remove all references to him in the Report is
denied,

(6) all motions to stay the release of the
Report are granted in part and denied in
part, in that the effects of this order to
release shall be stayed for ten days or until
such time as the Supreme Court shall act
upon an application for stay, whichever shall

last occur. The purpose of this decretal
paragraph is to permit any party desiring to
do so to seek a stay from the Supreme Court.
If no such stay is sought within the period
granted by this paragraph then this stay
shall be lifted. To achieve these ends, it is
ordered that counsel for any party seeking a
stay from the Supreme Court shall notify the
Clerk of the United States Court of Appeals
for the District of Columbia Circuit of that
fact upon the filing of application for such
stay, and shall further notify the Clerk
promptly upon learning of the disposition of
such application.

Before: SENTELLE, Presiding,
BUTZNER and SNEED, Senior Circuit
Judges.

Opinion for the Special Division filed by
Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

This matter is before the Court on the
submission by the Independent Counsel of
his Final Report, the comments of those
named therein, and motions of several par-
ties. Some movants have prayed that the
Court withhold release of the Independent
Counsel's Report in toto, or withhold those
parts that constitute grand jury material,
covered by Federal Rule of Criminal Proce-
dure 6(e)(2), while still others have moved
that the Report be released. We have here-
tofore ordered, on motion of certain journal-
ism and "public interest" groups that the
Report be released except for such deletions
as we might find necessary under Rule 6(e)
or other statutes. Those movants who seek
to have us order withholding of the Report in
effect seek reconsideration of that order, as
is their right, and we have given their rea-
sons due consideration.

For the most part, those movants praying
that the entire Report be withheld rely on
two provisions of law. First, they assert
their rights under 28 U.S.C. § 595(b)(3)
(1982) (recodified at 28 U.S.C. § 594(h)(2)),[1]
which provides that the Special Division has
discretion to release the Report, but is re-

---

1. This section, like most governing the Walsh
investigation, has been superseded by later reen-
actments. The older enactment continues to ap-

ply to those investigations pending on December
15, 1987. See Pub.L. No. 100–191, § 6(b), 101
Stat. 1293, 1307 (1987).

quired to "make such orders as are appropriate to protect the rights of any individual named in" the Final Report of an Independent Counsel. Second, they argue that the Report is so larded with grand jury material protected by the confidentiality requirements of Rule 6(e) that all, or at least substantial portions of the Report cannot lawfully be released. In conjunction with these two arguments, especially the first, the movants argue that the Independent Counsel Report will bear the imprimatur of the Court. While we find that the arguments of the movants for withholding the Report have considerable merit, for reasons set forth more fully hereinafter, we conclude that we should order the Report released substantially in its entirety. In so doing, we make plain that the Report does not bear the imprimatur of the Court. It is not an official accusation of crime against anyone. Insofar as it contains allegations of crime by persons not indicted, not convicted, or not found guilty, it is no more than the personal opinion of its signator and it does not gain any heightened status by being released under the order of this Court.

## I. BACKGROUND

It is not the purpose of this opinion to set forth the entire history of Lawrence Walsh as an Independent Counsel. For the most part, we shall cover only those events beginning with the filing of the Final Report of Independent Counsel Walsh and concluding with the issuance of this order. Such earlier events as we find necessary to reference will be discussed only as they become relevant to particular details herein.

On August 5, 1993, Independent Counsel Walsh filed the "Final Report of the Independent Counsel for Iran Contra Matters," as required by 28 U.S.C. § 595(b) (1982). That section provides that "before the termination of a[n] independent counsel's office under section 596(b) of this title, such independent counsel shall submit to the division of the court the report under this subsection." *Id.*, § 595(b)(1).

Subsection (3) of that same statute provides that this Court "may make any portion" of such report "available to any individual named in [the] report for the purposes of receiving ... any comments or factual information that such individual may submit." *Id.*, § 595(b)(3). Acting pursuant to that subsection, we gave notice to every individual named in the Report and provided that such individuals might have until October 3, 1993 in which to make comment.[2] Each named individual and/or counsel for such named individual received access to the portion or portions of the Report naming that person. In two instances, an individual named was discussed so pervasively that the full Report was provided to the individual and the individual's counsel. Upon motion of several of the individuals named, and because of the daunting scope of the task faced by many of them, we granted an extension of the period of comment until December 3, 1993.

Before the close of the comment period, two journalism organizations and a third "non-profit" organization filed what they styled an "Emergency Motion ... for Disclosure of Independent Counsel's Final Report." While the motion and its accompanying documents never made quite clear the basis upon which the movants thought their cause an emergency, the Court nevertheless considered their motion. The movants, in support of their motion for release of the full Report, quoted from a Senate report accompanying the 1987 reenactment of the Independent Counsel Act suggesting that "Congress" had therein "explained the factors to be weighed in determining the appropriate level of secrecy" for such a report. While obviously Congress speaks only through legislation, we considered the factors set out in the Senate report in making our initial decision to release, not because we found ourselves bound by the unenacted Senate report, but because we believed it to recite serious factors which

---

**2.** Some individuals given only minor or passing mention in the Report were not included in the first order. However, the Court later endeavored to provide notice and access during the remaining period for comment even as to those individuals. After the filing of comments had been closed, one individual, mentioned in a footnote, notified the Court that he had not received notice. The Court does not deem it necessary to reopen the comment period.

this court should consider in making that important decision. That report suggests:

> In considering whether to release court filings, it is intended that the court balance the right of the subjects of investigations to be shielded form [sic] publicity about unfounded or unfair allegations with the right of the public to inquire about prosecutions under this act. In balancing these concerns, the court should weigh such factors as [1] whether the subjects of the investigations have already been disclosed to the public; [2] whether the subjects do not object to the filings being released to the public; [3] whether the filings contain information which is already publicly known; and [4] whether the court filings consist of legal or factual rulings in a case which should be publicly available to understand the court's rules and precedents or to follow the developments in a particular matter.

SEN.REP. No. 123, 100th Cong., 1st Sess. 21 (1987), *reprinted in* 1987 U.S.C.C.A.N. 2150, 2170.

We agreed that such factors as these ought to be considered, and, upon considering these factors as they existed at the time of the emergency motion, we allowed the same. Upon reviewing the balance today, although we find the considerations against release to be weighty, we do not find them to reverse the tipping of the scales.

We issued the order allowing the emergency motion on December 3, 1993, the same date as the filing of the final comments by the persons named in the Report. In the meantime, former President Ronald W. Reagan had filed with this Court on October 21, 1993, a "suggestion that the Court exercise its power to terminate the office of the Independent Counsel." After the issuance of a show cause order and a response by the Independent Counsel, this Court, though not unanimous in its rationale, ordered that the comments would be the final word on the merits of the Iran/Contra investigation. *See In re North* (Walsh Show Cause Order), 10 F.3d 831 (D.C.Cir.1993). Specifically, we determined that the Independent Counsel would not have any power to respond to such comments but that he retained the further duty to file the Final Report with an appendix consisting of the comments authorized by this Court in accordance with the provisions of 28 U.S.C. § 594(h)(2) (1988) (reenacting § 595(b)(3) (1982) (technically applicable to the ongoing investigation by Independent Counsel Walsh)). Thus, the filing requirement of the Act, which we consider a condition precedent to the release of the Report, will not have fully passed until the filing inclusive of the comments. The Independent Counsel, operating under the order of December 1, together with the Clerk of this Court and necessary assistance from other government agencies, is currently compiling the statutory appendix and arranging for the final release of the Report.

This all said, we turn to the specific objections by the movants opposing release of the Report.

## II. THE FAIRNESS OBJECTIONS

### A. *Position of the Movants*

The movants opposing the release of the Report remind us that the Special Division, in connection with any release of the Final Report, "*shall* make such orders as are appropriate to protect the rights of any individual named" in the Report. 28 U.S.C. § 595(b)(3) (1982) (emphasis added). They note the contrast between this mandatory duty and the permissive language empowering us to order the release of the Report: "The division of the court *may* release to the Congress, the public," and others "such portions" of the Report "as the division deems appropriate." *Id.* They charge, accurately, that the Report repeatedly accuses named individuals of crimes, although in many instances the individual was never indicted, if indicted was never convicted, or if convicted the conviction was reversed. These accusations include charges that named individuals were guilty of a conspiracy charged in a count that was dismissed before trial, that various named public officials engaged in efforts to obstruct justice, where such individuals were never indicted, let alone convicted, and instances in which the Report charges that individuals were "factually guilty" even though the United States Court of Appeals

for the District of Columbia Circuit had reversed the only conviction relevant to the charge under discussion. Our review of the Report confirms that the movants' charges are accurate. The Report is rife with accusations of guilt of criminal conduct against persons never indicted or convicted.

The movants then argue that the Court cannot, consistent with its obligation to protect the rights of the individuals named, allow the release of what they fear will be considered an official document accusing them and others of crimes when, in some instances they have never been afforded even the determination of probable cause by a grand jury, let alone a constitutionally governed trial at which the government would have the burden of proving them guilty beyond a reasonable doubt. This is a strong argument. In the courts of the United States, any person charged with a felony has the right to have a grand jury pass on the probable cause to believe him guilty and has the further right, with a plethora of attendant constitutional protections, to stand innocent until proven guilty beyond a reasonable doubt before a jury of his peers. U.S. CONST. amends. V, VI.

The Independent Counsel, though not the normal type of federal prosecutor, is a federal prosecutor. As Attorney General and later Supreme Court Justice Robert Jackson observed:

> The prosecutor has more control over life, liberty, and reputation than any other person in America. His discretion is tremendous. He can have citizens investigated and, if he is that kind of person, he can have this done to the tune of public statements and veiled or unveiled intimations.

Robert H. Jackson, *The Federal Prosecutor*, 24 JUDICATURE 18, 18 (1940) (address delivered at the Second Annual Conference of United States Attorneys, April 1, 1940).

Consistent with the power and responsibility of their office, prosecutors do not issue reports, and they do not pronounce persons guilty of crimes who have not been indicted, tried, and convicted. The filing of reports by Independent Counsels is "a complete departure from the authority of a United States Attorney" and is "contrary to the practice in federal grand jury investigations." *In re Sealed Motion,* 880 F.2d 1367, 1369–70 (D.C.Cir.1989).

## B. *Independent Counsel's Position*

Unfortunately for movants, and perhaps for the tradition of fairness, the statute does require that the Independent Counsel file a report. *See* 28 U.S.C. § 595(b)(1) (1982). It is on that statutory requirement that the Independent Counsel relies in urging that we should release his Report even though it contains accusations of crime. As he notes, the purpose of the Final Report is to "ensure the accountability" of the Independent Counsel to the government of the United States and the public by providing "a detailed and official record of the activities of the [independent counsel] which may be reviewed and analyzed at the appropriate time." S.REP. No. 170, 95th Cong., 2d Sess. 70–71 (1978), *reprinted in* 1978 U.S.C.C.A.N. 4216, 4286. This reflects the *sui generis* nature of the independent counsel, in that he is an officer performing an executive function almost entirely without oversight from the Executive Branch of government. *See generally, Morrison v. Olson,* 487 U.S. 654, 705–09, 108 S.Ct. 2597, 2626, 101 L.Ed.2d 569 (1988) (Scalia, J., dissenting).

Independent Counsel specifically relies on the legislative mandate that the Report required by the statute is to include "the reasons for not prosecuting any matter within the prosecutorial jurisdiction of such independent counsel which was not prosecuted." 28 U.S.C. § 595(b)(2) (1982). He rightly contends that this compels him to comment on cases that were not taken to grand juries and potential charges that were not prosecuted.

It is not clear that this section has anything to do with comments on convictions that were ultimately vacated or reversed on appeal, but at least as to the greater portion of the unproven accusations the statute bears relevance. While it is clear that the statute supports the power of the prosecutor to comment, it is not clear that it supports the form that the present comments take. It is one thing for a report to say "we did not prosecute the allegations of the obstruction of

justice against John Doe because we did not have sufficient evidence to constitute probable cause;" and quite another to say "John Doe was guilty, but we didn't prosecute him because we could not prove it;" and still a third to say "the Court of Appeals reversed John Doe's conviction, but he was factually guilty anyway."

### C. *This Division's Role*

It is of course a wholly different question whether we should allow the release of the Report, it having been made in the accusatory form. There is no precedent that clearly guides our hand in drafting an answer. The nearest authority offered by any contestant comes from movants opposing release of the Report who compare the document to grand jury reports naming persons as having been criminal actors without making a formal indictment against which the persons named can defend. Federal case law contains a few examples of such presentment and generally condemns the practice.

For example, in *United States v. Briggs*, the Fifth Circuit noted that "[c]ommon law grand juries at times issued nonindicting reports." 514 F.2d 794, 801 (5th Cir.1975). Nonetheless, that circuit noted that it could "find no substantial authority permitting a federal grand jury to issue a report accusing named private persons of criminal conduct." *Id.* at 802. It further noted that various courts "have struck down with strong language efforts by grand juries to accuse persons of crime while affording them no forum in which to vindicate themselves." *Id.* (citing, *inter alia*, *In re United Elec., Radio, and Mach. Workers*, 111 F.Supp. 858, 867–68 (S.D.N.Y.1953)).

Movants argue, and we agree, that the fear of such condemnation by a grand jury arises in part from the fact that the grand jury report bears an official imprimatur, issued under the Court's aegis. They further contend that we should treat the Independent Counsel's Report just the same. That is, we should consider that it is issued with the Court's imprimatur, as the Court appointed the Independent Counsel, defined his jurisdiction, and most importantly, determined whether and to what extent to release the

Report. *See In re Sealed Motion*, 880 F.2d at 1376–77.

We lay aside for the moment the matter of determining whether and to what extent to release the Report, as that is the very question before us. Aside from deciding that question, appointing and defining the jurisdiction of the Independent Counsel is all that we have done about the Independent Counsel and all that we are going to do. The Independent Counsel does not operate under our supervision and his acts, including the writing of the Report, do not bear our aegis. Indeed, if the Independent Counsel Act did vest us with supervisory power over the essentially executive functions performed by the attorneys we appoint, the statute would be constitutionally suspect as a breach of the separation of powers defined by Articles I, II & III of the Constitution. *See Morrison v. Olson*, 487 U.S. at 680–84, 108 S.Ct. at 2613–15. As one member of this Special Division has noted, the Supreme Court in *Morrison* carefully construed the Act to place severe limitations on this Court's authority over the Independent Counsel in order to save the constitutionality of the Act, consistent with the duty of courts " 'to construe a statute in order to save it from constitutional infirmities.' " *In re North*, (*Walsh Show Cause Order*), 10 F.3d at 837 (Butzner; J., dissenting in part) (quoting *Morrison*, 487 U.S. at 682, 108 S.Ct. at 2614).

In short, the Report will not bear the imprimatur of the Court, nor is it issued under this Court's aegis. While we understand the movants' fear that it will be so perceived by the public, we are herein doing all we can to alleviate that misconception.

The Report and most specifically the unlitigated accusations contained in the Report are the Independent Counsel's. They are not the Court's. In a very real sense, the Independent Counsel's Report is no more a product of the Court than some statement made by a prosecutor to the news media. In *Buckley v. Fitzsimmons*, —— U.S. ——, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993), the Supreme Court acknowledged that "[s]tatements to the press may be an integral part of a prosecutor's job, and they may serve a vital public function. But in these respects a

prosecutor is in no different position than any other executive officials who deal with the press...." *Id.* at ——, 113 S.Ct. at 2618 (internal citation omitted) (citing National District Attorneys Ass'n, National Prosecution Standard 107, 110 (2d ed. 1991)). Here, the drafting of the Report may be a statutory duty of the Independent Counsel, but it is not part of any function of this Court and the Court places no imprimatur upon it. Therefore, though we find the objections of those movants who seek to have us rescind the release of the Report weighty, we do not find them to be controlling.

### D. *Standards for Decision*

■ In the end, we find the four standards suggested by the Senate Report to be useful, and again we subject the question before us to analysis under their rubric. We do so expressly noting that these factors are by no means exclusive and were not even suggested as such by the body that forwarded them in its Report. Nonetheless, they are useful. To restate, we ask:

[1] whether the subjects of the investigation have already been disclosed to the public; [2] whether the subjects do not object to the filings being released to the public; [3] whether the filings contain information which is already publicly known; and [4] whether the court filings consist of legal or factual rulings in a case which should be publicly available to understand the court's rules and precedents or to follow developments in a particular manner.

S.REP. No. 123, 100th Cong., 1st Sess. 21 (1987), *reprinted in* 1987 U.S.C.C.A.N. 2150.

■ As to the first—whether the subjects of the investigations have already been disclosed to the public—in this case, they generally have. For better or for worse, during the course of the past seven years, the Independent Counsel's actions have led to the indictments of fourteen persons, four well publicized trials, and media accounts, which this panel will not undertake to count, but which probably number alongside "cross ties on a railroad or stars in the sky." *On Top Of Old Smokey* (American Folk Song). While there are some persons named in the Report who have not previously been the subject of

indictment, conviction, or general media attention, neither are those persons named in such fashion as to make the release a great concern of theirs. This factor, therefore, weighs in favor of release.

Second—whether the subjects do not object to the filings being released to the public—in this case, some subjects object to release and some move for release. The easy out would be to order the release of those portions bearing on the subjects who want release and deny release as to those who oppose it. This will not work. Movants seeking release and movants opposing are the subjects of accounts as intertwined and inseparable as fibers within the strands of a woven rope. Candidly, more movants oppose than support release. But the vast majority of the persons named in the Report have not expressed an opinion one way or the other. Consistent with our phraseology borrowed from the Senate report, we would count those among the subjects who "do not object" to the release. However, counting noses does not decide the question. Even if only one person objected, and fairness compellingly directed withholding for his sake, we could withhold the Report in the face of one hundred who did not join in his objection. On balance, we find this factor to weigh against release, but only slightly.

Third—whether the filings contain information which is already publicly known—this is a factor which weighs most strongly in favor of release. Not only is the information widely known, it is widely known incorrectly. The Report rehashes interim reports, trial documents, and other matters that have been either formally or informally released in the past. In addition, there have been leaks. While the Court did all in its power to prevent release of the Report during the pendency of the comment period, the Court's power was not enough. There have been media accounts of parts of the Report during this pendency. *See, e.g.,* Max Boot, *Walsh's Iran/Contra Probe Comes to an End as Whimper, Not Bang,* CHRISTIAN SCI. MONITOR, Dec. 9, 1993, (The World) at 1; Robert L. Jackson & Ronald J. Ostrow, *Final Iran-Contra Report Faults Reagan and Bush,* L.A. TIMES, Dec. 5, 1993, at A1; *Report*

*Criticizes Reagan and Bush,* N.Y. TIMES, Dec. 5, 1993, § 1 at 31. The Independent Counsel himself has given statements to the media describing what he intended the Report to contain. Those statements, leaks, and media accounts were made without the right of reply by the subjects, were partial, and were in the judgment of this Court more unfair to the persons named than will be the present release of the completed Report with the comments of the named persons and this Court's express repudiation of imprimatur.

We understand that the calculus just recited may be a dangerous precedent. That is, some might suggest that a future Independent Counsel wishing to ensure the release of his report would go on television and make comments accusing the subjects of his report of crimes so that the Court could later find that the contents of the report were already public. As this Court has no supervisory power, there would be little we could do about it. As the Independent Counsel is virtually without supervision, there would be little anyone could do about it. This danger may be inherent in the nature of the Independent Counsel.

Nonetheless, despite the danger in the precedent, we do think that the reality of the partial public knowledge of the information in the Report weighs strongly in favor of releasing the whole. Particularly is this true, as some movants and some commenters want the Report released because in their view the Report would support a conclusion that they had engaged in no wrongdoing. We therefore weigh this factor in favor of release. We do so with the recognition that the rights of those persons accused of crimes for which they were never convicted are being compromised. We feel however that the protections afforded them by the formal withholding of an informally publicized Report would be ephemeral. Their right of comment, both in the Report and other fora, may do them more good than the order they seek from us.

Fourth—whether the Court filings consist of legal or factual rulings in a case which should be publicly available to understand the court's rules and precedents or to follow the developments in a particular matter—our treatment of this factor is short. The filings do not consist of either legal or factual rulings. Insofar as this weighs at all, it weighs against disclosure. However, it has little weight. If our answer had been "yes," that might be a factor tipping toward release. Where the answer is "no," it affects the balance little one way or the other.

In sum, we accept the seriousness of the fairness complaints of movants who have been accused "of crime while afford[ed] ... no forum in which to vindicate themselves." *Briggs,* 514 F.2d at 802. However, given all the facts and circumstances as they now prevail in this unique case, we will order release. Particularly, we weigh in favor of release the fact that the accusations are made without the imprimatur of the Court, have already been made in other highly publicized fora, and that the contents of the Report are being bandied at large in fragmentary form. We think the rights of all persons named are better protected by a full release with a contemporaneous right of comment than by withholding.

The four standards suggested by the Senate report and employed by us are ultimately for the service of the overriding goal suggested by an earlier Senate. As we noted above, the purpose of the Final Report is to "ensure the accountability" of the Independent Counsel to the government and the public. S.REP. No. 170, 95th Cong., 2d Sess. 70–71. The American public is particularly entitled to this accountability where the subject of the investigation and the investigation itself have been widely publicized of long duration and great expense. While we are not so naive as to suppose that controversy, publicity, and public questioning, either of the institutions and persons investigated or the Independent Counsel, will promptly cease upon revelation of the Report, we nonetheless think it in the national interest that the public, its representatives in the political branches, and its surrogates in the media have as full an access to the fruits of the investigation as possible, consistent with the fairness dictates of the law. Therefore, not only do we conclude that the microbalance provided by the four enumerated factors favors disclosure, but we further con-

clude that the macro determination of public interest impels us toward the same conclusion.

## III. THE RULE 6(e) OBJECTION

### A. *The Ancient Grand Jury Secrecy Principle*

The movants opposing disclosure raise a second objection to release even more weighty than their first. As they note, the Federal Rules of Criminal Procedure, embodying the ancient principle of grand jury secrecy, declare that "an attorney for the government ... shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules." FED. R.CRIM.P. 6(e)(2). As the Supreme Court has emphasized, "[g]rand jury secrecy ... is 'as important for the protection of the innocent as for the pursuit of the guilty.'" *United States v. Sells Eng'g. Inc.*, 463 U.S. 418, 424, 103 S.Ct. 3133, 3137, 77 L.Ed.2d 743 (1983) (quoting *United States v. Johnson*, 319 U.S. 503, 513, 63 S.Ct. 1233, 87 L.Ed. 1546 (1943)). Supreme Court decisions have catalogued additional reasons for preserving grand jury secrecy: (1) disclosure of pre-indictment proceedings would make many prospective witnesses "hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony"; (2) witnesses who did appear "would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements; and (3) there "would be the risk that those about to be indicted would flee or would try to influence individual grand jurors to vote against indictment." *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 218–19, 99 S.Ct. 1667, 1672–73, 60 L.Ed.2d 156 (1979).

### B. *Movant's Rule 6(e) Argument*

Movants thus argue that Rule 6(e) requires the Court to either not permit release, or to order deletion of all grand jury references ("6(e) material") before publication. The second option is a tempting but impossible one. We noted above that references to named persons seeking release of the Report were intertwined with references to named persons opposing it like hemp fibers. The intermingling of grand jury material with the rest of the Report is more like leaven in a loaf of bread. It cannot be separated out. Release is an up-or-down vote; redaction is simply not possible.

### C. *Independent Counsel's Response*

The Rule 6(e) objection is a powerful one. We have accepted response from the Independent Counsel on this subject. First, he contends that Rule 6(e) does not apply to Independent Counsels at all. He points first to the language of Rule 6(e) for the proposition that the secrecy the rule imposes is not absolute. He argues that

the rule applies only to

> [a] grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes the recorded testimony, an attorney for the government, [and government personnel assisting a government attorney].

Submission of Independent Counsel (quoting FED.R.CRIM.P. 6(e)(2)). This argument avails him little if anything. That list of the "only" people to whom the rule applies encompasses everyone who should know the contents of the grand jury material in the first place except for the witness himself, and it is well established that a witness is not bound to secrecy as to his own testimony. *In re Sealed Motion*, 880 F.2d at 1370–73. Indeed, the theory of the grand jury "'privilege is that the witness is guaranteed against compulsory disclosure; the privilege ... therefore [is] that of the witness, and rest[s] upon his consent.'" *Id.* at 1372 (quoting 8 JOHN H. WIGMORE EVIDENCE, § 2362 (McNaughton Rev. 1961) (emphasis omitted)). More to the point, even if we viewed the category of persons bound by the secrecy requirements as limited, rather than as unlimited but for the witness, this still would not support the conclusion that the Independent Counsel is not covered. The language of Rule 6 expressly binds attorneys for the government, and the Independent Counsel is one. *See* 28 U.S.C. § 594(a). Thus, from the words of the Rule and the nature of his office, it would appear that the Independent Counsel is generally covered by Rule 6(e).

The Independent Counsel argues further that because his office is *sui generis* the grand jury secrecy rules governing "ordinary criminal proceedings" do not apply. In support of this proposition, he cites *In re Sealed Motion*, 880 F.2d at 1368, wherein we noted the *sui generis* nature of the office. However, in that case we were dealing not with the power of the Independent Counsel to make general disclosure of grand jury material, but rather with the right of a witness before the grand jury to obtain a transcript of his own testimony over the objection of the Independent Counsel. In that same case, we held that the Special Division has the power to rule on motions for disclosure of grand jury material in matters involving the Independent Counsel as opposed to the general rule that motions "seeking release of such transcripts must, necessarily, be directed to the empaneling court." *Id.* at 1373. But nowhere did we hold that the secrecy requirement of Rule 6(e) does not apply to Independent Counsels.

The Independent Counsel further argues that the policy reasons normally served by grand jury secrecy are not applicable to the Final Report because "the grand jurors are not identified. The subject matter of the report has received extensive public attention. So have the persons under investigation by the grand jury. So also, have most of the witnesses." Submission of the Independent Counsel at 4. None of these arguments affects the applicability of Rule 6(e), nor even greatly weakens the policy reasons for its existence. Grand jurors are not commonly either more or less identified than those in this investigation. It is not uncommon for the subject matter of grand jury investigations to have received extensive public attention, indeed, it is commonplace. The same is true as to the identity of witnesses and persons under investigation. Again, it is not apparent that Rule 6(e) does not apply by its terms.

However, the Independent Counsel makes two more arguments that carry more weight, the second of which ultimately carries the

day. First, he notes that the Act requires the Independent Counsel in the Final Report to "set forth fully and completely a description of [his] work ... including ... the reasons for not prosecuting any matter within the prosecutorial jurisdiction of such independent counsel...." 28 U.S.C. § 595(b) (1982). He argues, in effect, that this must have worked a *pro tanto* repealer of the 6(e) obligation for him to include as much as necessary of the grand jury material in order to comply with this duty. While "repeals by implication are disfavored," *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1017, 104 S.Ct. 2862, 2880, 81 L.Ed.2d 815 (1984) (internal quotations omitted), this argument is not without force. Given the overwhelming likelihood that matters within his prosecutorial jurisdiction not taken to indictment have nonetheless been the subject of grand jury inquiry, Congress might have intended by this statutory mandate to release the Independent Counsel from the normal obligations of Rule 6(e). We do not so hold.

### D. The Division's Interpretation of Rule 6(e)

 Though the argument of the Independent Counsel is certainly not frivolous, this is beyond the normal notion of repealer by implication.[3] As the Supreme Court has frequently reminded us, "repeals by implication ... will not be found unless an intent to repeal is 'clear and manifest.'" *Rodriguez v. United States,* 480 U.S. 522, 524, 107 S.Ct. 1391, 1392, 94 L.Ed.2d 533 (1987) (citations omitted). Therefore, we are not to construe statutes so as to work a repealer by implication unless the statutes are in "irreconcilable conflict." *Id.* (citations omitted). In other words, "where two statutes are 'capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective.'" *Ruckelshaus,* 467 U.S. at 1018, 104 S.Ct. at 2880 (quoting *Regional Rail Reorganization Act Cases,* 419 U.S. 102, 133–34, 95 S.Ct. 335, 353–54, 42 L.Ed.2d 320

---

3. We assume for purposes of this discussion that a repealer by implication can occur with reference to a statute superseding a rule of court. We know of no case which has passed on this subject

one way or the other, but as we do not determine that such has occurred, we need not decide the broader question.

(1974)). As we can construe the Independent Counsel Act to require reporting only of so much as the Independent Counsel can report without disclosing 6(e) material, we are unable to find an irreconcilable conflict. Therefore, there is no repealer by implication, and Rule 6(e) applies by its terms. While Congress is silent on this exact subject, the nearest provision in the statute supports the view that the Independent Counsel is covered by Rule 6(e). Congress provided in 28 U.S.C. § 594(k)(1) concerning transfer of records to archives that "the independent counsel shall clearly identify which of these records are subject to rule 6(e)...."

■ It appears then that the Independent Counsel is covered by Rule 6(e) and its bonds of secrecy. We nonetheless note that the courts may loosen those bonds under the terms of the Rule. "Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made—(i) when so directed by a court preliminarily to or in connection with a judicial proceeding." FED.R.CRIM.P. 6(e)(3)(C). It is upon this exception that the Independent Counsel's ultimate argument rests, and it is under this exception that we ultimately order disclosure.

Our ruling here is not without difficulty. In the first place, the exception applies only in connection with judicial proceedings. We held *supra* that the compiling of the Report is not itself a judicial proceeding, but is at most the act of an executive department employee and is in a sense, only a statement by an individual occupying that position. Nonetheless, the decision to release the Report, in whole or in part, is the Court's.

While the Independent Counsel statute involves us in executive functions to an uncomfortable degree, our act here is a judicial one. *See generally Morrison v. Olson,* 487 U.S. at 677–84, 108 S.Ct. at 2611–15 (discussing generally the inter-relationship between Article III of the Constitution and the duties of the Special Division under the Independent Counsel Act). The Act requires us to make a decision on the release of the Final Report, as to which portions are appropriate for release, and as to what orders are appropriate for the protection of individuals named therein. As these are the acts of the Court, in a genuine case or controversy between the movants and the Independent Counsel, our acts constitute a judicial proceeding, as we have previously held. *In re Sealed Motion,* 880 F.2d at 1379 ("A judicial proceeding includes every proceeding of a judicial nature before a competent court or before a tribunal or officer clothed with judicial or quasi-judicial powers") (quoting *Jones v. City of Greensboro,* 51 N.C.App. 571, 277 S.E.2d 562, 571 (1981)). Thus the exception in Rule 6(e)(3)(C) does apply.

■ In performing our function in this specific case, we will permit the inclusion of what previously amounted to Rule 6(e) material, not because we hold that the Rule does not apply to the Independent Counsel, but because in this case the material has already lost its protected character. The Independent Counsel in his four interim reports to Congress included most, if not all, of the 6(e) material now disclosed in the Final Report. More specifically, the Independent Counsel submitted his Report to this Court on August 5, 1993. As we noted above, we thereafter permitted full or partial inspection of the Report by all persons named therein. Given the intertwined nature of the materials concerning various persons, and especially given the full disclosure to two persons, many or most of the named persons have already had access, not only to grand jury material concerning themselves, but also to that concerning other persons named in the Report.

Arguably, the Independent Counsel should have applied to us for a Rule 6(e)(3)(C) exception before filing the Report containing the grand jury material. Arguably, we should have *sua sponte* ordered the withholding of the Report upon its original filing, although this would have smacked of the sort of supervision that we are not constitutionally empowered to exercise. *See Morrison,* 487 U.S. at 680–84, 108 S.Ct. at 2613–15; *In re North (Walsh Show Cause Order),* 10 F.3d at 836 (Butzner, J., dissenting). Neither of these things happened. Instead, the Rule 6(e) material was given currency among the extended community of persons named in the Report and ultimately became part of the media accounts, though not necessarily identified as grand-jury-related by that time. As

one member of this panel observed in a far different context, it "is impossible" to "remove[ ] leaked material from the news media and cram[ ] it back into Grand Jury secrecy." *Barry v. United States,* 865 F.2d 1317, 1328 (D.C.Cir.1989) (Sentelle, J., dissenting). Just so here.

We do not intend to formulate a rule that once a leak of Rule 6(e) material has occurred, government attorneys are free to ignore the pre-existing bond of secrecy. We recognize the general rule that "Rule 6(e) does not create a type of secrecy which is waived once public disclosure occurs." *Barry v. United States,* 740 F.Supp. 888, 891 (D.D.C.1990). For that reason, it is commonly said that when the media reports information alleged to be grand jury material, "the government is obligated to stand silent" and not confirm the information, whether it is accurate or not. *Id.* There must come a time, however, when information is sufficiently widely known that it has lost its character as Rule 6(e) material. The purpose in Rule 6(e) is to preserve secrecy. Information widely known is not secret. By way of example, when a judge in open court and in the presence of reporters had inadvertently stated the name of the as yet unindicted subject of a grand jury investigation, one circuit held that "the cat is out of the bag" and vacated an injunction against further publication entered by the district court. *In re Charlotte Observer,* 921 F.2d 47, 50 (4th Cir.1990).

Similarly, the District Court in *Barry,* although commenting on the nonwaivable nature of Rule 6(e) secrecy, at the same time observed that by the time an article appeared in a major newspaper and "a myriad of individuals" had become familiar with a witness's testimony, it was "by no means clear that the source for [the] publication was in fact a person covered by Rule 6(e)." 740 F.Supp. at 891.

Although we are once again faced with a question for which there is no compelling precedent, we conclude with reference to the Rule 6(e) objection, as we did with reference to the general fairness issue that publication is in order. Rule 6(e) is designed to protect secrecy. That secrecy no longer exists. While we do not hold that the Independent Counsel is outside the coverage of Rule 6(e), we do hold that Rule 6(e) does not prevent release of the present Report.

## CONCLUSION

To summarize: We do not accept the Independent Counsel's invitation to hold that 28 U.S.C. § 595(b) compels him to include in his Report accusations of guilt against persons not indicted or convicted, or against persons whose convictions have been reversed on appeal. We nonetheless reject the motions of persons named in the Report that the Report be withheld on statutory fairness grounds. We do so on our conclusion that a greater unfairness is worked by leaving the public exposed to the partial and potentially distorted accounts at large than by releasing the actual Report to which the persons named have had the right of reply. We further do so with the holding that this Report issues without the imprimatur of the Court and not under its aegis.

We recognize that there are powerful arguments for and against disclosure. Upon reflection on all the arguments brought before us, and on all the things and matters of record, we conclude that it is in the public interest that this matter of extended national controversy be afforded as full a conclusion as possible. Therefore, rather than extend the controversy over the supposed, reported, or suspected contents of the Report, we have determined that the public interest will be served by actual disclosure.

We further conclude that the Independent Counsel as an attorney for the United States is covered by the strictures of Rule 6(e) of the Federal Rules of Criminal Procedure. Nonetheless, we recognize that his argument that the reporting requirement of the Independent Counsel statute works a *pro tanto* repealer of that Rule insofar as it would cover him is not a frivolous one. In the end, we deny the motions that the Report be withheld on the basis of Rule 6(e), not because Rule 6(e) is ineffective against the Independent Counsel, but because in this case, the secrecy to be protected by Rule 6(e) no longer exists.

As to the entire order, given the serious nature of the arguments made on all sides, and the serious consequences of our order, we will stay our order for a period of ten (10) days in order to allow all persons objecting a reasonable period of time within which to apply to the Supreme Court for a stay of this order pending review. Should any party have applied for such a stay to the Supreme Court during that ten-day period, and the Supreme Court not have acted on the application at the expiration of ten days, we will extend that stay until such time as the Supreme Court does so act.

ORDERED ACCORDINGLY.