**In re: Alphonso Michael (Mike) ESPY.**

**Division No. 94–2.**

United States Court of Appeals,
District of Columbia Circuit.

Filed Aug. 14, 2001.

# ORDER

PER CURIAM.

It is ORDERED, ADJUDGED and DE-CREED that the Motion of the Independent Counsel to release the final report is granted.

The effects of this order to release shall be stayed for ten days or until such time as the Supreme Court shall act upon an application for stay, whichever shall last occur. The purpose of this decretal paragraph is to permit any party desiring to do so to seek a stay from the Supreme Court. If no such stay is sought within the period granted by this paragraph, then this stay shall be lifted. To achieve these ends, it is ordered that counsel for any party seeking a stay from the Supreme Court shall notify the Clerk of the United States Court of Appeals for the District of Columbia Circuit of that fact upon the filing of application for such stay, and shall further notify the Clerk promptly upon learning of the disposition of such application.

SENTELLE, Presiding Judge:

This matter comes before us on the Motion of the Independent Counsel ("IC") appointed by the Court for the investigation of matters relating to former Secretary of Agriculture Alphonso Michael Espy to authorize public release of the final report of his investigation. The IC has prepared the report pursuant to 28 U.S.C. § 594(h) which requires that "[a]n independent counsel shall ... (B) before the termination of the independent counsel's office under section 596(b), file a final report with the division of the court, setting forth fully and completely a description of the work of the independent counsel, including the disposition of all cases brought."

Before: SENTELLE, Presiding, FAY and CUDAHY, Senior Circuit Judges.

Opinion for the Court filed by Presiding Judge SENTELLE.

Concurring opinion filed by Senior Circuit Judge CUDAHY.

He addresses his motion to the Court pursuant to § 594(h)(2) which authorizes the Court to "release to the Congress, the public, or any appropriate person, such portions of the report made under this subsection as the division of the court considers appropriate."

As we have noted before, the reporting requirement is a unique feature of the now-lapsed statute creating the unique office of independent counsel. *See In re North*, 16 F.3d 1234, 1239 (D.C.Cir., Spec. Div., 1994) (per curiam) (noting that "no precedent ... clearly guides our hand" in dealing with questions arising from the reporting requirement). The issuance of a document issued by a prosecutor, not of itself under the aegis of either the court or the grand jury, yet potentially harmful to the reputation of persons investigated is certainly troubling, and we have found it troubling in our prior proceedings under this statute. *See generally id.* at 16 F.3d 1234. Especially is this so given that such a report often, as in this case, contains grand jury material governed by the confidentiality provisions of FED. R.CRIM. P. 6(e).

### Rule 6(e) Problems

■ Rule 6(e) declares that "an attorney for the government ... shall not disclose matters occurring before the Grand Jury, except as otherwise provided for in these rules." FED. R.CRIM. P. 6(e)(2). The independent counsel is an attorney for the government and his release of grand jury material is covered by Rule 6(e). *In re North*, 16 F.3d at 1242. Thus, insofar as the report carries with it grand jury material, that material may not be released to the public "except as otherwise provided for in" the Federal Rules of Criminal Procedure. In the past, we have found the relevant authority in FED.R.CRIM.P. 6(e)(3)(C): "Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made—(i)

when so directed by a court preliminary to or in connection with a judicial proceeding." That exception to the grand jury secrecy rule empowers courts to authorize release of otherwise secret material governed by Rule 6(e), in judicial proceedings. We have held that the Court's function in the release of reports is a judicial proceeding, *In re North*, 16 F.3d at 1244. Therefore, this exception does apply to permit the release of material otherwise covered by the rule if we find such release to be otherwise lawful and appropriate.

■ The second difficulty which we have confronted in the past is the assertion that only the court which empanels a grand jury has jurisdiction over the release of grand jury material. We have, however, authoritatively rejected that proposition, holding that 28 U.S.C. § 594(h)(2), which empowers this Special Division to " 'make such orders as are appropriate to protect the rights of any individual named in such (independent counsel's) report ...,' " taken in the context, confers upon this Court the necessary jurisdiction, regardless of whether that jurisdiction would otherwise be exclusive with the empaneling court. *In re Sealed Motion*, 880 F.2d 1367, 1374–75 (D.C.Cir., Spec. Div. 1989) (per curiam) (quoting 28 U.S.C. § 594(h)(2)). Indeed, in *Morrison v. Olson*, the Supreme Court "compared the 'functions that the Special Division is empowered to perform ... to functions that federal judges perform in other contexts, *such as deciding whether to allow disclosure of matters occurring before the grand jury.*' " *Id.* at 1374 (quoting *Morrison v. Olson*, 487 U.S. 654, 681, 108 S.Ct. 2597, 101 L.Ed.2d 569 (1988) (emphasis and ellipses supplied in *In re Sealed Motion*.)) While the Supreme Court's language is obviously not a holding, this strong dicta provided support for our holding in *In re Sealed Motion* that the Divi-

sion does possess the necessary jurisdiction to make the Rule 6(e)(C) disclosure determination.

We therefore remain satisfied that we have jurisdiction to enter the order prayed by the Independent Counsel.

### Propriety of Disclosure

 In determining whether or not to order the disclosure of independent counsel reports, and specifically of grand jury materials contained therein, we adopted in *In re North* an analysis weighing four not necessarily exclusive factors:

[1] whether the subjects of the investigations have already been disclosed to the public;

[2] whether the subjects do not object to the filings being released to the public;

[3] whether the filings contain information which is already publicly known; and

[4] whether the court filings consist of legal or factual rulings in a case which should be publicly available to understand the court's rules and precedents or to follow the developments in a particular matter.

16 F.3d at 1237 (quoting SEN. REP. No. 123, 100th Cong., 1st Sess. 21 (1987), *reprinted in* 1987 U.S.C.C.A.N. 2150, 2170). We apply those four parts today.

We first ask "whether the subjects of the investigations have already been disclosed to the public." The subjects of the investigation have already been officially disclosed in the course of criminal trials. Therefore this factor weighs in favor of disclosure.

We second ask "whether the subjects do not object to the filings being released to the public." We have provided the same opportunity in this case for comment that we provided in *In re North* and in numerous other independent counsel investigations. While we have received numerous comments, only one comment, filed on behalf of three related individuals, addresses the question of disclosure. As in *In re North* "the vast majority of the persons named in the Report have not expressed an opinion one way or the other." In *In re North*, we determined that "counting noses does not decide the question." *Id.* at 1240. Here, as in *In re North*, "[e]ven if only one person objected, and fairness compellingly directed withholding for his sake, we could withhold the Report...." *Id.* In the prior case we found that on balance "this factor [weighed] against release, but only slightly." *Id.* In the matter before us, we have examined the single objection. While we find it not at all frivolous, we further note that the comment itself, while opposing publication, further requests that "at a minimum ... this letter be appended to the report." The report as contemplated will include the filing of that letter. On balance, we conclude that this factor weighs in favor of release, though only slightly.

The third factor, "whether the filings contain information which is already publicly known," weighs most strongly in favor of release. In *In re North* we noted that "[n]ot only is the information widely known, it is widely known incorrectly." *Id.* We therefore concluded that a more complete version of the information coupled with the opportunity for comment by the persons named created a strong impetus for release. The same is true in the matter before us. As the one objecting comment notes, "most of the story" about which the commenter is concerned "was disclosed in a public forum, Secretary Espy's trial." While the commenter goes on to note that the report of the Independent Counsel arguably misleads the reader about certain facts of the "story," the commenter's own document which is to be filed with the report rebuts or at least responds to the Independent Counsel's version.

Therefore, we conclude that the public interest in full disclosure of that which has been partially or misleadingly disclosed already weighs in favor of the granting of publication.

The fourth factor "whether the court filings consist of legal or factual rulings in a case which should be publicly available to understand the court's rules and precedents or to follow the developments in a particular matter"—as in *In re North* is not of great weight on either side of the scale. By no means does the report consist entirely or even marginally of such rulings. If this factor weighs at all, it therefore weighs against disclosure, but it does not weigh very much. As in *In re North*, "[i]f our answer had been 'yes,' that might be a factor tipping towards release. Where the answer is 'no,' it affects the balance little one way or the other." *Id.* at 1241.

We therefore conclude as we did in *In re North* that the motion for publication of the Independent Counsel's report, inclusive of an appendix containing all comments filed by persons named in the report, is granted. As in the prior case we are filing contemporaneously herewith an order staying publication for a period of ten days so that any party affected by this order may if any such party so wishes seek a further stay from the Supreme Court.

*So ordered.*

CUDAHY, Senior Circuit Judge, concurring.

I concur fully in Judge Sentelle's opinion for the majority. I write separately only to offer a further comment on the difficult balance between fairness to the persons investigated and the public interest in full disclosure, which is touched upon by Judge Sentelle here and was explored more fully in the leading precedent, *In re North*, 16 F.3d 1234 (D.C.Cir.1994). As the majority notes here, "The issuance of a document issued by a prosecutor, not of itself under the aegis of either the court or the grand jury, yet potentially harmful to the reputation of persons investigated is certainly troubling, and we have found it troubling in our prior proceedings under this statute." *Ante,* at 728.

This investigation was perhaps unique in the annals of the independent counsels in that its principal subject, Secretary of Agriculture Michael Espy, was indicted on 39 counts by a grand jury and acquitted on all counts by a trial jury after a two-month trial. It is certainly not my role to comment on those unique circumstances, although I will suggest that the final report does little to explain why matters turned out as they did.

I perhaps bring an unusual perspective to the matters covered by this final report, since I presided for a number of years over a firm intensively regulated by the United States Department of Agriculture under the Meat Inspection Act. So I fully understand the sensitivity of relations between such firms and their managements and agents and officials of the Department of Agriculture. This report at several points, in attempting to establish the importance of this investigation, cites Upton Sinclair's classic, *The Jungle,* whose purpose was to expose labor conditions in the meatpacking industry but which led instead to the passage of the Meat Inspection Act in 1907.

The report, which with appendices is more than 400 pages long, also includes a defense of the independent counsel procedure against charges of excessive delay and cost and of having a distorted focus. This is a bit of special pleading, which is likely to be viewed skeptically. But it is fair comment. The report also predictably deplores the injection of politics into appraisals of an independent counsel's work, though—considering that the subjects of

theses investigations are at the highest levels of political power—one could hardly expect things to be sanitized against politics.

Trying to strike some kind of appropriate balance between fairness to those investigated—whether convicted or acquitted—or even indicted—and the public interest in disclosure of how things looked to the prosecutor at various stages of the investigations and the prosecutions may be almost impossible. But in the last analysis, in this as in many similar situations, public disclosure, with whatever safeguards can be put in place, seems the more prudent course.