Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

————

Filed July 15, 2003

Division No. 94-1

In Re: Madison Guaranty Savings & Loan
(Clinton Fee Application)

————

Division for the Purpose of
Appointing Independent Counsels
Ethics in Government Act of 1978, As Amended

————

Before: Sentelle, *Presiding*, Fay and Reavley, *Senior Circuit Judges*.

## O R D E R

This matter coming to be heard and being heard before the Special Division of the Court upon the application of William Jefferson Clinton and Hillary Rodham Clinton for reimbursement of attorneys' fees and costs pursuant to section 593(f) of the Ethics in Government Act of 1978, as amended, 28 U.S.C. § 591 *et seq.* (2000), and it appearing to the court for the reasons set forth more fully in the opinion filed contemporaneously herewith, that the petition is not well taken, it is hereby

**ORDERED, ADJUDGED,** and **DECREED** that the petition of William Jefferson Clinton and Hillary Rodham Clinton

for attorneys' fees they incurred during the Independent Counsel's investigation be denied, save for a single unique item.

*PER CURIAM*

For the Court:

Mark J. Langer, Clerk

By:

Marilyn R. Sargent, Chief Deputy Clerk

Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

————

Filed July 15, 2003

Division No. 94-1

IN RE: MADISON GUARANTY SAVINGS & LOAN
(CLINTON FEE APPLICATION)

————

Division for the Purpose of
Appointing Independent Counsels
Ethics in Government Act of 1978, As Amended

————

Before: SENTELLE, *Presiding*, FAY and REAVLEY, *Senior Circuit Judges*.

## ON APPLICATION FOR ATTORNEYS' FEES

Opinion for the Special Court filed PER CURIAM.

PER CURIAM: William Jefferson Clinton and Hillary Rodham Clinton petition this Court under section 593(f) of the Ethics in Government Act of 1978, as amended, 28 U.S.C. §§ 591–599 (2000) (the Act), for reimbursement of attorneys' fees in the amount of $3,549,561.22 that they incurred during and as a result of the investigation conducted by independent counsel. Because we conclude that the Clintons have not carried their burden of showing that the fees would not have been incurred but for the requirements of the Act, we deny the petition, save for a single unique item.

**BACKGROUND**

In 1978, then-Arkansas Attorney General William Jefferson Clinton, his wife Hillary Rodham Clinton, and Jim and Susan McDougal purchased 230 acres of undeveloped property in Arkansas. To develop the property they formed a partnership known as the Whitewater Development Company. In 1982 Jim McDougal purchased a savings and loan and renamed it Madison Guaranty Savings and Loan Association. Over the next few years, Jim McDougal and Madison Guaranty were involved in questionable financial transactions, some of which benefitted Whitewater Development. Also during this time period Mrs. Clinton and one of her law partners, Webster Hubbell, performed legal work for Madison Guaranty involving at least one of the questionable transactions. These activities eventually drew the attention of federal bank regulators, who made a criminal referral in 1992 to the U.S. Attorney's Office in Little Rock. The referrals alleged that Jim and Susan McDougal had fraudulently misused bank accounts at Madison Guaranty to benefit entities owned by them, including Whitewater Development. Additional referrals soon followed, some of which concerned questionable campaign contributions to Mr. Clinton in 1985. The U.S Attorney's Office undertook an investigation, and in late 1993 transferred the case to the Criminal Division of the Department of Justice.

Following Mr. Clinton's inauguration as President in January of 1993, public pressure began mounting for the appointment of an independent prosecutor to investigate Mr. Clinton's role in the Madison Guaranty matters. The Ethics in Government Act,[1] which had provided the mechanism for appointing statutory independent prosecutors to investigate

---

[1] In 1978 the Congress, in response to concerns about the impartiality of the Executive Branch during the investigation of the Watergate matter, enacted the Ethics in Government Act, which authorized a special court to appoint an independent counsel to prosecute violations of the criminal law involving high government officials, including the President. As its name implies, this counsel was to function independent of any federal government agency.

allegations of wrongdoing by high government officials, lapsed by its terms in 1992 and had not been reenacted by the Congress. Consequently, in early 1994, the Attorney General appointed Robert B. Fiske, Jr., as regulatory independent counsel to continue the investigation of all matters relating to Madison Guaranty. During the approximately eight months of Fiske's investigation, his office conducted hundreds of interviews, subpoenaed millions of pages of documents, and obtained three guilty pleas. Subsequently, in June of 1994, the independent counsel statute was reauthorized by the Congress. Pursuant to the statute, in August of that year we appointed Kenneth Starr as statutory independent counsel (hereinafter "IC" or "OIC") to take over the investigation. Starr was authorized to investigate, *inter alia*, the Clintons' relationships with Whitewater and Madison Guaranty. Eventually, the McDougals were convicted of numerous banking violations, and Webster Hubbell was convicted in connection with his efforts to cover up his relationship with Madison Guaranty. During the investigation the OIC also looked into the death of Deputy White House Counsel Vincent W. Foster, Jr.; the dismissal of employees from the White House Travel Office; the receipt by the White House Office of Personnel Security of a number of FBI files; and Mr. Clinton's giving and suborning of false testimony concerning his relationship with White House intern Monica Lewinsky.[2] While the Clintons were not indicted, President Clinton was impeached, and the independent counsel obtained 24 indictments and at least 16 convictions of other subjects of the investigation. *See In re Madison Guar. Sav. & Loan Assn.*, 187 F.3d 652, 653 (D.C. Cir., Spec. Div., 1999) (per curiam). Pursuant to § 594(h)(1)(B) of the Act, the OIC filed final reports on each area of its jurisdiction, including four volumes on the Madison Guaranty/Whitewater investigation.

The Clintons, pursuant to section 593(f)(1) of the Act, have now petitioned this Court for reimbursement of the attorneys'

---

[2] By agreement between the Independent Counsel and former President Clinton, no attorneys' fees are being sought by Mr. Clinton for legal representation related to the Lewinsky matter.

fees that they incurred during the IC's investigation. As directed by section 593(f)(2) of the Act, we forwarded copies of the Clintons' fee petition to the Attorney General and the IC and requested written evaluations of the petition. The Court expresses its appreciation to the IC and the Attorney General for submitting these evaluations, which we have given due consideration in arriving at the decision announced herein.

## DISCUSSION

Unique in the criminal law structure of the United States, the Ethics in Government Act provides for reimbursement of attorneys' fees expended by subjects in defense against an investigation under the Act. Specifically, 28 U.S.C. § 593(f)(1) states:

> Upon the request of an individual who is the subject of an investigation conducted by an independent counsel pursuant to this chapter, the division of the court may, if no indictment is brought against such individual pursuant to that investigation, award reimbursement for those reasonable attorneys' fees incurred by that individual during that investigation which would not have been incurred but for the requirements of this chapter.

Because the Act "constitutes a waiver of sovereign immunity it is to be strictly construed." *In re Nofziger*, 925 F.2d 428, 438 (D.C. Cir., Spec. Div., 1991) (per curiam). Therefore, the Act provides reimbursement only for attorneys' fees that survive an elemental analysis determining whether the petitioner is the "subject" of the independent counsel's investigation, incurred the fees "during" that investigation, and would not have incurred them "but for" the requirements of the Act. The petitioner "bears the burden of establishing all elements of his entitlement." *In re North (Reagan Fee Application)*, 94 F.3d 685, 690 (D.C. Cir., Spec. Div., 1996) (per curiam). We conclude that the Clintons have not met the "but for" requirement.

As we have held, "[a]ll requests for attorneys' fees under the Act must satisfy the 'but for' requirement of" the Act. *In re Sealed Case*, 890 F.2d 451, 452 (D.C. Cir., Spec. Div., 1989) (per curiam). The purpose of awarding only fees that would not have been incurred "but for" the Act is to ensure that "officials who are investigated by independent counsels will be subject only to paying those attorneys' fees that would normally be paid by private citizens being investigated for the same offense by" federal executive officials such as the United States Attorney. *Id.* at 452–53 (citing S. REP. NO. 97–496, 97th Cong., 2d Sess. 18 (1982), *reprinted in* 1982 U.S.C.C.A.N. 3537, 3554 (referring to "fees [that] would not have been incurred in the absence of the special prosecutor [independent counsel] law")).

As we have stated, "[t]he most difficult element for a fee applicant to establish under the Act is that the fees 'would not have been incurred but for the requirements of [the Act].'" *In re North (Bush Fee Application)*, 59 F.3d 184, 188 (D.C. Cir., Spec. Div., 1995) (per curiam) (quoting *In re North (Dutton Fee Application)*, 11 F.3d 1075, 1079 (D.C. Cir., Spec. Div., 1993) (per curiam)). In part this is so because the element requires a petitioner to prove a negative and one with a high component of speculation. In part, though, it is difficult because the law contemplates that it should be difficult; that such fees will not be a common thing. *In re Olson*, 884 F.2d 1415, 1420 (D.C. Cir., Spec. Div., 1989) (per curiam) ("The Court is admonished to award reimbursement for attorneys' fees 'in only rare instances' for 'extraordinary expenses,' 'sparingly'") (quoting S. REP. NO. 97–496, 97th Cong., 2d Sess. 19 (1982)). As we stated above, the contemplation of the legislation is not that subjects of independent counsel investigations will be reimbursed for all legal fees, but only that they will be reimbursed for those legal fees that would not have been incurred by a similarly-situated subject investigated in the absence of the Act.

The Clintons argue that they satisfy the "but for" requirement under two separate theories: 1) if not for the Act, the case could have been disposed of at an early stage of the investigation; and 2) they were investigated under the Act

where private citizens would not have been investigated. For the reasons stated below, we do not find these arguments persuasive.

**Case could have been disposed of earlier.** First, the Clintons argue that the "but for" requirement is satisfied in this case because the Act caused "delays due to the necessity of preparing a final report and to jurisdictional challenges to the Independent Counsel." Section 594(h)(1)(B) of the Act provides that an independent counsel shall "file a final report . . . setting forth fully and completely a description of the work of the independent counsel, including the disposition of all cases brought." The Clintons claim that this provision significantly increased the time and breadth of the IC's investigation because each of the numerous allegations presented to the IC had to be looked into at length in order "to enable the Independent Counsel to provide conclusive answers in the [final] report." The Clintons assert that a regular prosecutor, in contrast, having determined that there was not enough evidence to go forward on particular issues, would have been free to ignore them. Consequently, they argue that "[u]ncharged subjects merit reimbursement for the increased burden of defense that results from the report-driven investigation of such issues." They sum up this argument by stating that "the Court should exercise its discretion to award an appropriate portion of the Clintons' total fees and expenses that were incurred as a result of the Act's reporting requirements."

The Clintons further claim that the uncertainty of the scope of the Independent Counsel's jurisdiction led to numerous jurisdictional challenges, and that this ancillary litigation caused delays in the investigation. The result, they argue, is that the IC was less able than a DOJ prosecutor to handle the investigation efficiently, "causing the Clintons to incur legal costs and fees which would not have been incurred by persons subject to an ordinary Department of Justice or United States Attorney-run investigation."

In her evaluation of the Clintons' fee application, pursuant to 28 U.S.C. § 593(f)(2), the IC argues that the Clintons fail

to show exactly which fees extend to these delays. Regarding the Clintons' argument that the need for a final report significantly extends the IC's investigation, the IC notes that, although this is true, it cannot be the basis for an award of fees because if it were then "all unindicted subjects of every independent counsel investigation would automatically be entitled to reimbursement of all their fees." Regarding the Clintons' argument concerning fees incurred because of delays caused by jurisdictional disputes, the IC states that "the Clintons do not attempt to show how these delays even caused them to incur *increased* fees, let alone how they could support an award of their fees." (Emphasis in original.)

The DOJ addresses the Clintons' argument in a similar fashion, stating that if the Clintons' contention were accepted, then every unindicted subject of an IC's investigation would be entitled to fees. With respect to the Clintons' argument that jurisdictional disputes caused delay and thus prolonged the IC's investigation, the DOJ again states that this limitation is present in every independent counsel investigation and therefore cannot be the basis for an award of fees. In any event, the DOJ asserts that "the application has not sought to identify how or to what extent the delay may have caused them to incur additional fees."

We note that in *In re Nofziger* the fee applicant made an argument similar to the Clintons, claiming that the Act's limits on the investigatory authority of the Attorney General *per se* satisfied the "but for" requirement. In rejecting that argument we noted that "[i]f the law on that point were as Nofziger contends, attorneys' fees would be awarded in every independent counsel investigation . . . because the same statutory restrictions on the investigative authority of the Attorney General apply in every [independent counsel] investigation." 925 F.2d at 441. And we explained in an earlier discussion in that case that "Congress . . . never intended that attorneys' fees should be awarded in *every* independent counsel case." *Id.* at 437 (emphasis in original). As both the IC and the DOJ point out, the same reasoning would apply to the Clintons' arguments that the provision for a final report lengthened and deepened the IC's investigation and that

jurisdictional disputes caused delays. Such situations occur in every independent counsel investigation, and therefore cannot be bases for satisfying the "but for" requirement.

**Investigated where private citizens would not have been.** The Clintons further assert that they are entitled to reimbursement because they were investigated under the Act in circumstances where private citizens would not have been. They note that the IC's investigation cost over 70 million dollars and lasted for more than seven years, and therefore argue that "if there was ever a case where the subjects of an OIC investigation incurred costs far above and beyond what private citizens incurred in a similar DOJ investigation, this is the case." The Clintons note that an investigation of the Whitewater matter had previously been conducted and completed by the United States Attorney's office but only reopened as a consequence of newspaper reporting in connection with the 1992 presidential election campaign. They claim, therefore, that because of their public roles (President and First Lady) they were subjected to an investigation that was more intense and thorough than a normal investigation of private citizens, stating that "the DOJ would [not] have expended such enormous resources investigating a small Arkansas land deal involving private citizens and the failure of a moderately-sized Arkansas S&L."

The Clintons state that although more recent Special Division cases have held that the proper inquiry in the context of the "but for" requirement is whether a high government official would, in the absence of the Act, still have been investigated as a high government official, *see, e.g., In re Espy (Kearney Fee Application)*, 319 F.3d 526, 531 (D.C. Cir., Spec. Div., 2003) (per curiam); *In re Babbitt (Babbitt Fee Application)*, 290 F.3d 386, 390–91 (D.C. Cir., Spec. Div., 2002) (per curiam), "those cases involved the investigation of a high government official for misconduct committed *in his or her official capacity*." (Emphasis in original.) But this investigation, assert the Clintons, "was based upon a land deal dating from 1978 and legal work done for Madison Guaranty in 1985–86," before Clinton was elected President. Therefore, they claim that under our decisions in *In re*

*Nofziger*, 925 F.2d at 442–44, and *In re Sealed Case*, 890 F.2d at 453–54, the "proper inquiry … is whether the Clintons were subjected to a 'more rigorous application of the criminal law' than would have been applied to private, ordinary citizens."

The IC challenges this argument by the Clintons by first noting that unless it can be shown that an investigative agency such as the DOJ would not have conducted a similar investigation in the absence of the Act, then the "but for" requirement is not fulfilled. *See In re Babbitt (Babbitt Fee Application)*, 290 F.3d at 391. The IC points out that many of the offenses that were ultimately investigated by the IC in this matter were investigated initially by the U.S. Attorney's office in Little Rock, then by the Fraud Section of the DOJ, and then by regulatory independent counsel Fiske. Therefore, argues the IC, the Court does not need to ask what would have happened in the absence of the Act because the answer is already known, i.e., "an extensive investigation was conducted under the jurisdiction of the Department of Justice."

Next, the IC states that the Clintons' argument comparing the investigation of them to an investigation of private citizens is wholly without merit. First, the IC notes that the amount of money and length of time spent on the IC's investigation, and referred to by the Clintons as evidence of harsher treatment of them, encompassed considerably more people than just the Clintons. Furthermore, the IC argues that in the absence of the Act regulatory independent counsel Fiske handled the investigations and prosecutions in a similar fashion to the IC, and so "[h]owever differently [the Clintons] may have been treated because of their high position, that different treatment did not result from any requirement of the Act."

In its evaluation, the DOJ begins by declaring that it would have conducted an investigation of the underlying matters even without the independent counsel statute. Like the IC, the DOJ points out that it investigated this matter in the absence of the Act through the Eastern District of Arkansas U.S. Attorney's Office, the Criminal Division, and regulatory

independent counsel Fiske. Furthermore, the DOJ notes that the investigation led to numerous convictions, including with respect to the Whitewater real estate project in which the Clintons were involved.

The DOJ then states that the Clintons' claim that they were subjected to a harsher treatment of the criminal law than private citizens is misguided. Citing to *In re Pierce (Kisner Fee Application)*, 178 F.3d 1356 (D.C. Cir., Spec. Div., 1999) (per curiam), and *In re Babbitt (Babbitt Fee Application)*, the DOJ asserts that the test is not a comparison of the investigation of the fee applicant to an investigation of a private citizen, but rather whether the DOJ would have investigated the applicant in his or her capacity as a high government official. The DOJ states that "[t]he Clintons' fee application does not show that a regular prosecutor, faced with similar allegations involving a sitting President and First Lady, would not have looked into this matter."

We agree with the IC and the DOJ that this argument by the Clintons does not satisfy the "but for" requirement. The Clintons claim that the "but for" test is whether there would have been a similar investigation of private citizens, and that in any event the DOJ would not have conducted such a massive investigation of them. First, under our prior decisions, the test is not, as the Clintons argue, what would have happened if the Clintons were private citizens, but rather what would have happened if there had been no independent counsel statute. *See In re Babbitt (Babbitt Fee Application)*, 290 F.3d at 391; *In re Nofziger*, 925 F.2d at 443. The Clintons' reliance on *In re Sealed Case* and *In re Nofziger* in support of their argument here is misplaced.

In *In re Sealed Case* the fee applicant had been subjected to an independent counsel investigation involving his federal tax obligations. In holding that the "but for" requirement was satisfied, the Court noted the Attorney General's reference in his application to the Court for appointment of the independent counsel that the Act's restrictions had interfered with his ability to conduct an adequate preliminary investigation, and the Court further noted that if the Attorney General

had not been so restricted then the applicant might have either been exonerated or subjected to a lesser investigation. Furthermore, the Court noted that although the independent counsel's jurisdiction encompassed the tax years 1981, 1982, and 1984, the government official's tax returns were actually examined for the tax years 1976 to 1984. The Court stated:

> [R]elying partially upon the Attorney General's reference to the limitations placed upon him by the Act, and additionally upon the alleged offenses investigated by the Independent Counsel pursuant to his defined jurisdiction, we conclude that the subsequent investigation subjected applicant to a "more rigorous application of the criminal law than is applied to other litigants" under suspicion for committing the same offenses.

890 F.2d at 453. In the absence of the Act, then, the fee applicant would in all likelihood have been subjected to either no investigation or a substantially lesser one. That is not the situation here, however, as neither of the conditions relied on by the Court in that case is present in this one.

In *In re Nofziger* we addressed the argument that the appropriate comparison is between public officials and private citizens, i.e., that the "but for" requirement is satisfied when a subject of an independent counsel investigation incurs fees that would not have been incurred by a private citizen in an investigation of the same allegations. We noted there that that comparison was being made in reference to situations similar to that in *In re Jordan*, 745 F.2d 1574 (D.C. Cir., Spec. Div., 1984), where government officials were investigated by an independent counsel for crimes – possession and use of a minimal amount of cocaine – that for policy reasons the DOJ rarely prosecuted against private citizens. 925 F.2d at 442–43, *see also In re Segal,* 151 F.3d 1085, 1088–89 (D.C. Cir., Spec. Div., 1998) (per curiam). In Nofziger's case we observed that the allegations – illegal lobbying – were of substantially greater culpability, and that the DOJ had no policy against prosecuting such crimes. *Id.* at 448. We held that *"the appropriate inquiry in Nofziger's case"* was whether "Nofziger, absent the statute, [would] have been similarly

investigated and prosecuted by the Department of Justice following receipt of evidence that he [engaged in illegal lobbying]." *Id.* at 444 (emphasis in original). That inquiry led us to the conclusion that Nofziger "was not subjected to an investigation that he would not have been subjected to in the absence of the Act." *Id.* at 446.

We make the same inquiry and conclusion concerning the Clintons here. Two years before the appointment of Independent Counsel Starr, a criminal referral was submitted by the Resolution Trust Corporation to the U.S. Attorney for the Eastern District of Arkansas alleging illegal activities involving Madison Guaranty Savings and Loan Association, and naming the McDougals as suspects and the Clintons as witnesses. When in early 1994 the Attorney General appointed Robert Fiske as regulatory independent counsel, she gave him broad authority to investigate the Clintons' relationship with, *inter alia*, Madison Guaranty and the Whitewater Development Corporation. And when we appointed Kenneth Starr as statutory independent counsel in the summer of 1994, at the request of the Attorney General we granted him investigatory authority almost identical to Fiske's. The IC's final report on the Whitewater matter states that "[t]he breadth of the criminality already uncovered by the Fiske investigation in part contributed to the length of time necessary for the statutory Independent Counsel to complete his work." *See* Robert W. Ray, Final Report of the Independent Counsel, In Re: Madison Guaranty Savings & Loan Association, Vol. I, 21 (2001). Taking all of the above into consideration, we harbor no doubt that in the absence of the independent counsel statute the allegations surrounding the Clintons, Madison Guaranty, and Whitewater would have been similarly investigated and prosecuted by the Department of Justice.

The Clintons nevertheless argue that the DOJ would have conducted a substantially lesser investigation than that of the IC. The facts would not appear to substantiate this argument. Another independent counsel, albeit regulatory, had been appointed to investigate the matter, and in the short period he was in office he conducted an extensive investigation spending several hundred thousand dollars. But in any

event, the size of the independent counsel's investigation is not a controlling factor in deciding whether or not the "but for" test is satisfied. In *In re North (Garrett Fee Application)*, 46 F.3d 1192, 1194 (D.C. Cir., Spec. Div., 1995) (per curiam), the fee petitioner also claimed that he was eligible for reimbursement of attorneys' fees because he argued that he was caught in an independent counsel investigation, Iran–Contra, that was "unprecedented both in terms of its scope and intensity." We stated that we could not "accept this as a basis for awarding attorneys' fees. The purpose of the Act is to promote a vigorous and thorough investigation of criminal allegations by the independent counsel." *Id. See also In re Espy (Kearney Fee Application)*, 319 F.3d at 530–31. Similarly, in *In re Nofziger* we stated that "[i]nvestigations by independent counsel should go to considerable lengths and 'leave no stone unturned' to inculpate or exculpate a subject," and that "[t]horough compliance" by an independent counsel with his duty to investigate high-government officials "does not operate to satisfy the statutory requirements for an award of attorneys' fees." 925 F.2d at 437. And we further stated in *Nofziger* that a vigorous and thorough investigation may indeed increase the costs to subjects of independent counsel investigations in contrast to the costs that would have been incurred in a similar investigation conducted outside the Act, but that Congress had not made allowance for reimbursement of such inherent costs of independent counsel investigations. *Id.* at 445.

But although the Clintons were not investigated by the IC differently than they would have been otherwise, in the absence of the Act they would not have incurred fees for review and response to the IC's final report. Section 594 of the Act requires that the independent counsel "file a final report with the division of the court, setting forth fully and completely a description of the work of the independent counsel...." 28 U.S.C. § 594(h)(1)(B). Absent the Act, federal "prosecutors do not issue reports." *In re North*, 16 F.3d 1234, 1238 (D.C. Cir., Spec. Div., 1994) (per curiam). Indeed, as we have observed before, "[t]he filing of reports by

Independent Counsels is 'a complete departure from the authority of a United States Attorney' and is 'contrary to the practice in federal grand jury investigations.'" *Id*. (quoting *In re Sealed Motion*, 880 F.2d 1367, 1369–70 (D.C. Cir., Spec. Div., 1989) (per curiam)). Therefore, we hold that the amount of $85,312.01 in reasonable attorneys' fees that the Clintons incurred for reviewing and responding to the IC's final reports is reimbursable.

## CONCLUSION

For the reasons set forth above, we allow in part the petition of William Jefferson Clinton and Hillary Rodham Clinton to the extent of ordering reimbursement for attorneys' fees in the amount of $85,312.01. We deny the balance of the petition as not meeting the "but for" requirement of the Act, 28 U.S.C. § 593(f)(1).