Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

————

Filed February 27, 2004

Division No. 94-1

IN RE: MADISON GUARANTY SAVINGS & LOAN
(LARRY FEE APPLICATION)

————

Division for the Purpose of
Appointing Independent Counsels
Ethics in Government Act of 1978, As Amended

————

Before: SENTELLE, *Presiding*, FAY and REAVLEY, *Senior Circuit Judges*.

————

## O R D E R

This matter coming to be heard and being heard before the Special Division of the Court upon the application of Richard M. Larry for reimbursement of attorneys' fees and costs pursuant to section 593(f) of the Ethics in Government Act of 1978, as amended, 28 U.S.C. § 591 *et seq.* (2000), and it appearing to the court for the reasons set forth more fully in the opinion filed contemporaneously herewith that the petition is not well taken, it is hereby

**ORDERED, ADJUDGED,** and **DECREED** that the petition of Richard M. Larry for attorneys' fees that he incurred during the investigation by Independent Counsel be denied.

PER CURIAM

For the Court:

Mark J. Langer, Clerk

By:

Marilyn R. Sargent

Chief Deputy Clerk

Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Filed February 27, 2004

———

Division No.  94-1

In Re: Madison Guaranty Savings & Loan
(Larry Fee Application)

———

Division for the Purpose of
Appointing Independent Counsels
Ethics in Government Act of 1978, As Amended

———

Before: Sentelle, *Presiding*, Fay and Reavley, *Senior Circuit Judges*.

## ON APPLICATION FOR ATTORNEYS' FEES

Opinion for the Special Court filed *PER CURIAM*.

*Per curiam*: Richard M. Larry petitions this court under Section 593(f) of the Ethics in Government Act of 1978, as amended, 28 U.S.C. § 591 *et seq.* (2000) (the "Act"), for reimbursement of attorneys' fees in the amount of $44,930.69 that he incurred during, and as a result of, the investigation conducted by Independent Counsel.  Because we conclude that Larry has not carried his burden of showing that he was a "subject" of the investigation or that the fees would not have been incurred "but for" the requirements of the Act, we deny the petition in its entirety.

## Background[1]

In the mid–1980's, Jim and Susan McDougal, along with former President William Jefferson Clinton and Hillary Rodham Clinton, were members of a Little Rock, Arkansas, partnership known as the Whitewater Development Company. At this time, Jim McDougal was also the owner of a Little Rock savings and loan, Madison Guaranty, and David Hale was the owner of Capital Management Services, Inc. ("CMS"), a Little Rock company regulated, and in large part funded, by the Small Business Administration. Hale, the McDougals, and former Arkansas Governor Jim Guy Tucker apparently became involved in a fraudulent scheme involving Madison Guaranty and CMS. The investigation was initially conducted by the U.S. Attorney in Little Rock, but later transferred to the DOJ's criminal division. Robert B. Fiske, Jr., after his appointment by the Attorney General ("AG") in January 1994 as regulatory independent counsel, took over the investigation. In August 1994 this Court appointed Kenneth W. Starr as statutory independent counsel (hereinafter "IC" or "OIC") to investigate the Whitewater matter, and his office assumed the investigation of the fraudulent Madison Guaranty/CMS scheme. During the time period of these various investigations, indictments and convictions were secured with Hale's cooperation against the McDougals and Tucker for conspiracy and fraud involving Madison Guaranty and CMS. Indictments and convictions were also secured against Tucker for tax conspiracy and fraud involving CMS.

Thereafter, allegations arose that things of value had been given to Hale to influence his testimony in these matters. Specifically, it was alleged that a friend of Hale's, Parker Dozhier, had provided the things of value, and that FBI

---

[1] We have had recent occasion to review the facts of this matter in *In re Madison Guaranty Savings & Loan (Scaife Fee Application),* 354 F.3d 900 (D.C. Cir., Spec. Div., 2004) (per curiam). Rather than re-plow recently tilled ground, we have adopted from that opinion much of the language in the background portion of this opinion, and, where applicable, a portion of the analysis from that decision as well.

agents guarding Hale had witnessed these transactions. Further, it was alleged that Dozhier had received the funds to acquire these things of value from Stephen Boynton, an attorney who worked for *American Spectator* magazine, which was investigating possible misconduct by the Clintons in Arkansas. *American Spectator*, in turn, had received funds from one or more of the foundations controlled by Richard Mellon Scaife. This situation led to public statements and allegations of improprieties on the part of Scaife by at least one member of Congress, John Conyers, Jr., who at the same time questioned an alleged financial relationship between Scaife and IC Starr. Conyers requested an investigation of the matter by the Attorney General. Conyers also sent a letter concerning the matter to Scaife.

Upon conferral between the AG and the IC, the IC established an Office of Special Review ("OSR") to investigate. During the investigation, Richard M. Larry, the fee petitioner here, was subpoenaed to appear before the grand jury in his capacity as president of the Scaife foundations involved in the matter. Ultimately, the OSR concluded that many of the allegations regarding the tendering and receipt of things of value were unsubstantiated or untrue, and recommended that no prosecutions be brought.[2] The findings and conclusions of the OSR were accepted by the IC, and the matter was closed.

Pursuant to section 593(f)(1) of the Act, Larry now petitions this court for reimbursement of the attorneys' fees that he incurred during the OSR investigation. He seeks reimbursement in the amount of $44,930.69. As directed by section 593(f)(2) of the Act, we forwarded copies of Larry's fee petition to the Attorney General and the IC and requested written evaluations of the petition. The court expresses its appreciation to the IC and the Attorney General for submitting these evaluations, which we have given due consideration in arriving at the decision announced herein.

---

[2] The report of the OSR remains under seal. The factual information contained in this opinion has previously been publicly reported elsewhere.

**Discussion**

The Ethics in Government Act provides for reimbursement of attorneys' fees expended in defense against an investigation under the Act by subjects who qualify under 28 U.S.C. § 593(f)(1). That section provides:

> Upon the request of an individual who is the subject of an investigation conducted by an independent counsel pursuant to this chapter, the division of the court may, if no indictment is brought against such individual pursuant to that investigation, award reimbursement for those reasonable attorneys' fees incurred by that individual during that investigation which would not have been incurred but for the requirements of this chapter.

Because the Act "constitutes a waiver of sovereign immunity it is to be strictly construed." *In re Nofziger*, 925 F.2d 428, 438 (D.C. Cir., Spec. Div., 1991) (per curiam). Under the Act, therefore, we can only order reimbursement for attorneys' fees when we determine, *inter alia*, that the fee petitioner was a "subject" of the independent counsel's investigation and would not have incurred the attorneys' fees "but for" the requirements of the Act. *See, e.g., In re Pierce (Kisner Fee Application)*, 178 F.3d 1356, 1358 (D.C. Cir., Spec. Div., 1999) (per curiam). The petitioner "bears the burden of establishing all elements of his entitlement." *In re North (Reagan Fee Application)*, 94 F.3d 685, 690 (D.C. Cir., Spec. Div., 1996) (per curiam). For the reasons stated below, we find that Larry has failed to establish the "subject" and "but for" elements and is therefore not entitled to an attorneys' fees award.

*1. "Subject" Status*

The statute by its terms provides reimbursement of fees only to "an individual who is the *subject* of an investigation conducted by an independent counsel." 28 U.S.C. § 593(f)(1) (emphasis added). Though the statute does not define "subject," we have previously held that status as a "mere witness" is not sufficient to meet the elemental requirement of "subject" designation for purposes of the Act. *In re North*

*(Dutton Fee Application)*, 11 F.3d 1075, 1078 (D.C. Cir., Spec. Div., 1993) (per curiam). A fee applicant must establish that he is a person whose conduct was within the scope of the independent counsel's investigation in the sense that "the Independent Counsel might reasonably be expected to point the finger of accusation" at him. *Id.* Otherwise put, he must not merely have been a witness to the matters under investigation, but a potential defendant of indictments that might arise from that investigation. Although Larry argues that he "easily meets" the Act's requirement for being a subject of the OIC/OSR investigation, we are not persuaded that the OSR, or at any other time the OIC, was focused on any possible criminal culpability by Larry or Scaife.

Larry claims that the letter Scaife received from Congressman Conyers "suggest[ed] that [Scaife] had directed money to a witness to encourage or reward testimony adverse to President Clinton and his allies." Larry asserts that "[t]his money presumably passed through Mr. Larry's hands, because it reportedly came from the two foundations that he administered." He goes on to argue that from the time Scaife received the letter from Congressman Conyers until the time that he (Larry) received notification from the OSR that no prosecution would be initiated against him, he "understood that he was accused of directing foundation donations into the pocket of a government witness in exchange for or as a reward for the witness's favorable testimony." Larry sums up his claim to being a subject by stating that "[a]ny person in his position would have reasonably believed that there was a realistic possibility of his being charged with bribery or offering an illegal gratuity . . ."

In disputing Larry's claim of being a subject of the OSR/OIC investigation, the IC's evaluation contends that Larry was merely a fact witness. According to the IC, Larry's "involvement in the investigation was solely as custodian of the records of the foundations and as a person with knowledge of the foundations' activities." The DOJ's evaluation leaves it to the IC to respond to Larry's subject claim, but briefly notes that Larry's assertion that he was a subject of the IC's investigation because he was issued one or more

subpoenas in this matter is "not . . . sufficient to demonstrate that Mr. Larry was a subject of the investigation."

We agree with the IC and the DOJ that Larry has not carried his burden of establishing that he was in fact a subject of the OIC/OSR investigation. The documents Larry relied upon show that he was only a witness. Statements from his petition, as well as documents attached thereto, establish that he received a subpoena, superseded shortly thereafter by another, to testify before the grand jury. The subpoenas were addressed not to Larry personally, but to the "Carthage Foundation c/o Richard Larry" and the "Sarah Scaife Foundation c/o Richard Larry." This buttresses the IC's claim that Larry was merely a custodian of records rather than a subject of the investigation. Furthermore, the cover letter for the original subpoena was from the OIC/OSR "Witness Coordinator" and states that the Witness Coordinator should be contacted for Larry's entitlement to a "witness fee" and that a "Fact Witness Voucher" should be executed. Letter from the OIC/OSR, August 14, 1998. *Cf. In re North (Gardner Fee Application)*, 30 F.3d 143, 146 (D.C. Cir., Spec. Div., 1994) (per curiam) ("the Independent Counsel issued a grand jury subpoena designating [petitioner] as a subject").

Additionally, the cover letter for the superseding subpoena states that an interview of Larry will be necessary before his grand jury appearance. Letter from the OIC/OSR to William L. Gardner and H. Yale Gutnick, August 26, 1998. Other than this interview and his grand jury appearance, there is no evidence of any other contact between Larry and the OIC/OSR. *See In re Pierce (Sanders Fee Application)*, 198 F.3d 899, 902 (D.C. Cir., Spec. Div., 1999) (per curiam) (petitioner's involvement with IC's investigation considered "minimal" in that he was served one subpoena for documents and interviewed once three years later). There is also no evidence that Larry was ever informed that he was a subject of the OIC/OSR investigation, either in writing, *see, e.g., In re North (Cave Fee Application)*, 57 F.3d 1117, 1120 (D.C. Cir., Spec. Div., 1995) (per curiam) (petitioner received letter from OIC specifically advising him that his status was that of subject), or otherwise, *see, e.g., In re Segal (Sagawa Fee Application)*,

151 F.3d 1085, 1088 (D.C. Cir., Spec. Div., 1998) (per curiam) (IC did not contest petitioner's claim that she was "expressly informed" by his office that she was a subject); *In re North (Dwyer Fee Application)*, 120 F.3d 293, 296 (D.C. Cir., Spec. Div., 1997) (per curiam) (IC in his evaluation stated that petitioner could have reasonably believed that he was a subject). In sum, it is apparent that Larry's status was that of witness, and "status as a 'mere witness' is not sufficient to meet the elemental requirement of 'subject' designation for purposes of the Act." *In re Pierce (Abrams Fee Application)*, 190 F.3d 586, 590 (D.C. Cir., Spec. Div., 1999) (per curiam).

### 2. *Fees Not Incurred "But For" the Requirements of the Act*

We have in the past held that "[a]ll requests for attorneys' fees under the Act must satisfy the 'but for' requirement of" the Act. *In re Sealed Case*, 890 F.2d 451, 452 (D.C. Cir., Spec. Div., 1989) (per curiam). On numerous occasions we have also held that "the contemplation of the legislation is not that subjects of independent counsel investigations will be reimbursed for all legal fees, but only . . . for those legal fees that would not have been incurred by a similarly-situated subject investigated in the absence of the Act." *See In re Madison Guaranty Savings & Loan (Clinton Fee Application)*, 334 F.3d 1119, 1123 (D.C. Cir., Spec. Div., 2003).

Larry claims that he satisfies the "but for" element of the Act under two theories previously identified by this court: (1) when the petitioning subject has been prejudiced by the Department of Justice's failure to comply with the substantial protective features of the Act, *see In re Meese*, 907 F.2d 1192 (D.C. Cir., Spec. Div., 1990) (per curiam); and (2) when high public officials or derivative subjects were investigated under the Act in circumstances where private citizens would not have been investigated, *see In re Nofziger*, 925 F.2d 428, 442 (D.C. Cir., Spec. Div., 1991) (per curiam).

Under theory (1), Larry argues that Congressman Conyers accused IC Starr of a lack of independence because of IC Starr's alleged financial ties to Scaife. Thus, when the AG

requested that IC Starr investigate the matter, "Mr. Starr could not, in good conscience, decline to investigate Mr. Larry, because the Starr/Scaife 'relationship' was the fulcrum of the Attorney General's referral." According to Larry, IC Starr was thus deprived of his prosecutorial discretion to dismiss matters granted to him by Section 594(g), which Larry describes as "the most important feature of the Act." Larry was thus "robbed of the ability to have the independent counsel exercise its discretion and dismiss the matter without formal investigation."

In furtherance of this argument, Larry compares his situation favorably to that of the fee petitioner in *In re Meese*, 907 F.2d 1192 (D.C. Cir., Spec. Div., 1990) (per curiam). In that case, the AG made a referral to the independent counsel concerning Meese. According to Larry, that referral "was based upon speculation and conjecture" with "the Court conclud[ing] that the referral should never have been brought." Larry claims that his "situation is no different than Meese's" because "[t]here was never, at any time, any evidence linking him to any payoffs of David Hale." Quoting from *Meese*, he states that his referral arose only from a " 'generalized suspicion based on associations of a personal and personal business nature.' " *Id.* at 1200.

Under theory (2), Larry states that he "clearly and undeniably has been subjected to a more rigorous application and different standards of criminal law than are applied to persons not covered by the Act." He claims that at the time of the "referral," there was no evidence to establish a level of guilt between him and Hale, *see U.S. v. Sun–Diamond Growers*, 526 U.S. 398 (1999), and he further states that "even the most highly skilled prosecutor would have viewed as fruitless an attempt to attribute Mr. Boynton's conduct to Mr. Larry, and then to attribute to Mr. Larry a culpable state of mind." In this light, Larry argues that Scaife was investigated on a "frivolous allegation" because of his conservative views; that he (Larry) was caught in the crossfire; that "[i]n any other climate, there would have been no investigation"; and that therefore he would not have been investigated but for the requirements of the Act.

The IC in her evaluation does not directly address Larry's "but for" arguments; instead, she refers the Court to her discussion of the Scaife fee petition and states that "[f]or the same reasons, Larry's arguments are without merit." In her discussion of Scaife's petition, the IC argued that, even in the absence of the Act, this matter would have been investigated:

> The Department of Justice had received information indicating that a government witness in a successful criminal prosecution had committed perjury, obstruction of justice, or other serious crimes. Even without the requirements of the Act, given the Department's interest in these allegations, some federal prosecutor would have investigated. The Department of Justice routinely investigates allegations of witness tampering or other obstructive behavior.

Independent Counsel's Evaluation of Scaife Fee Petition, at 9–10.

The IC also noted there that the DOJ's interest in investigating this matter would have been particularly high because of the allegations that FBI agents were involved in, or at least had knowledge of, the acts. The IC further pointed out that the allegations directly related to FBI agents who had been assigned to regulatory independent counsel Fiske and one of his cooperating witnesses. Therefore, even in the absence of the Act, if Fiske had continued the investigation, he "would [ ] also have conducted some investigation into whether anyone had tampered with Hale." Like the IC, the DOJ notes that "[a]llegations that a witness in a prior stage of an ongoing criminal investigation may have testified falsely, and may have been paid to make false statements, would be taken seriously by any prosecutor, with or without an Independent Counsel law."

We are not persuaded that Larry would not have incurred his attorneys' fees in the absence of the Act. In a companion case, we noted that the IC's investigation of the matter known generally as Whitewater would have been undertaken even in the absence of the IC statute. *In re Madison Guaranty Savings & Loan (Clinton Fee Application)*, 334

F.3d at 1127. In making this conclusion, we noted that the Whitewater allegations looked into by IC Starr were, prior to his appointment, investigated by various prosecutors, including regulatory independent counsel Fiske. In this light, we stated that "we harbor no doubt that in the absence of the independent counsel statute the allegations surrounding the Clintons, Madison Guaranty, and Whitewater would have been similarly investigated and prosecuted by the Department of Justice." *Id.* So too here. As the IC points out, the allegations surrounding Hale, Tucker, and the McDougals concerning Madison Guaranty and CMS were already investigated by the U.S. Attorney's office and regulatory independent counsel Fiske before being assumed by IC Starr. There appears to us no reason why, in the absence of the statute under which we appointed IC Starr, the investigation of this particular matter would not have continued in the same manner as it did under IC Starr. Consequently, the particular allegations surrounding Hale that were investigated by the OIC/OSR concerning witness tampering are, as the DOJ points out, serious matters ordinarily handled by the case's prosecutors, and which we are certain would have been handled in a similar fashion by regulatory independent counsel Fiske's prosecutors in the absence of the Act.

## CONCLUSION

The petition of Richard M. Larry for reimbursement of attorneys' fees is denied for failure to comply with the "subject" and "but for" requirements of 28 U.S.C. § 593(f)(1).