# United States Court of Appeals

## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Filed May 31, 2005

Division No. 94-1

IN RE: MADISON GUARANTY SAVINGS & LOAN
(NELVIS FEE APPLICATION)

———

Division for the Purpose of
Appointing Independent Counsels
Ethics in Government Act of 1978, As Amended

———

Before: SENTELLE, *Presiding*, FAY and REAVLEY, *Senior
Circuit Judges*.

## O R D E R

This matter coming to be heard and being heard before the
Special Division of the Court upon the application of Bayani C.
Nelvis for reimbursement of attorneys' fees and costs pursuant
to section 593(f) of the Ethics in Government Act of 1978, as
amended, 28 U.S.C. § 591 *et seq.* (2000), and it appearing to the
court for the reasons set forth more fully in the opinion filed
contemporaneously herewith, that the petition is not well taken,
it is hereby

**ORDERED, ADJUDGED,** and **DECREED** that the petition of Bayani C. Nelvis for attorneys' fees that he incurred during the Independent Counsel's investigation be denied, save for a single unique item.

*PER CURIAM*
For the Court:
Mark J. Langer, Clerk

By: Marilyn R. Sargent,
    Chief Deputy Clerk

# United States Court of Appeals

## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Filed May 31, 2005

Division No. 94-1

IN RE: MADISON GUARANTY SAVINGS & LOAN
(NELVIS FEE APPLICATION)

———

Division for the Purpose of
Appointing Independent Counsels
Ethics in Government Act of 1978, As Amended

———

Before: SENTELLE, *Presiding*, FAY and REAVLEY, *Senior Circuit Judges*.


## ON APPLICATION FOR ATTORNEYS' FEES

Opinion for the Special Court filed PER CURIAM.

PER CURIAM: Bayani C. Nelvis petitions this court under section 593(f) of the Ethics in Government Act of 1978, as amended, 28 U.S.C. §§ 591-599 (2000) ("the Act"), for reimbursement of attorneys' fees in the amount of $18,850.00 that he claims were incurred during and as a result of the investigation conducted by Independent Counsel. Because we conclude that Nelvis has not carried his burden of establishing all of the elements of his entitlement, we deny the petition except for a single unique item.

## I. Background

In the mid-1990's, Paula Jones sued President William Jefferson Clinton in federal district court in Arkansas, alleging that during the 1980's while he was Governor there and she was a state employee, he made a sexual advance towards her in violation of federal and state law. (Hereinafter, *Jones v. Clinton*.) In preparation for trial, Jones's attorneys sought other government employees towards whom the President may have made sexual advances. To that end, in December 1997 the attorneys subpoenaed Monica Lewinsky, an intern and then employee of the Clinton White House. Although she and the President had been having a sexual relationship since about 1995, Lewinsky executed an affidavit in response to the subpoena denying any such relationship.

Also subpoenaed at the time was Linda Tripp, a friend of Lewinsky's. Ominously, Lewinsky told Tripp of the false affidavit and that she intended to lie about her relationship with the President if deposed. She also urged Tripp to lie about the matter in her own deposition. Tripp in turn related these comments to the office of Independent Counsel Kenneth W. Starr ("IC" or "OIC"), who had been investigating allegations of shady business deals on the part of Clinton and others while Clinton was Governor of Arkansas. The IC also learned that Lewinsky had spoken to the President about being subpoenaed, and that an influential friend of the President's was trying to find Lewinsky a job. The IC related this information to the Attorney General ("AG"), who then conducted a preliminary investigation pursuant to § 591(a) of the Act to determine whether further investigation was warranted. On January 16, 1998, the AG determined that further investigation was indeed warranted, and expanded the IC's jurisdiction to include an investigation of whether any criminal laws had been violated by any of those

involved in the matter.

On January 17, 1998, the President was deposed in *Jones v. Clinton*. During the deposition, Clinton "denied having a 'sexual affair,' a 'sexual relationship' or 'sexual relations' with Lewinsky. He also testified that he had no specific memory of being 'alone' with Lewinsky." *See* ROBERT W. RAY, FINAL REPORT OF THE INDEPENDENT COUNSEL, IN RE: MADISON GUARANTY SAVINGS & LOAN ASSOCIATION, REGARDING MONICA LEWINSKY AND OTHERS, 16 (2001).

In light of these developments, the IC set out to determine the true nature of Lewinsky's and the President's relationship, relying on what others had seen and heard. To that end, the IC subpoenaed Bayani C. Nelvis, the fee petitioner here. Nelvis was a Navy Chief Petty Officer assigned to the White House during the Clinton administration. It appears that his main function was tending to the personal needs of the President by providing the President and his visitors with food and refreshments, including serving the President his meals when he ate in the Oval Office complex. In this role, according to Nelvis, he "had nearly-unlimited personal access to the Oval Office, the President's personal dining room and the President's study." He further states that during the time Lewinsky was assigned to the White House he and she became acquainted and later formed a friendship, and that he had observed Lewinsky in the presence of the President in the Oval Office.

After Nelvis testified before the grand jury about relevant information he had regarding the President's relationship with Lewinsky, the IC believed that certain of his testimony was false. Nelvis was consequently informed that he was a target of the IC's investigation. Ultimately, however, the IC declined prosecution and referred the matter to the Department of Defense for further disposition. Pursuant to § 593(f)(1) of the

Act, Nelvis now petitions the court for attorneys' fees in the amount of $18,850.00 that he incurred in his defense of the IC's investigation.

## II. Discussion

The Independent Counsel statute provides:

> Upon the request of an individual who is the subject of an investigation conducted by an independent counsel pursuant to this chapter, the division of the court may, if no indictment is brought against such individual pursuant to that investigation, award reimbursement for those reasonable attorneys' fees incurred by that individual during that investigation which would not have been incurred but for the requirements of this chapter.

28 U.S.C. § 593(f)(1). Accordingly, in order to obtain an attorneys' fees award under the statute, a petitioner must show that all of the following requirements are met: (1) the petitioner is a subject of the investigation, (2) the fees were incurred during the investigation, (3) the fees would not have been incurred but for the requirements of the Act, and (4) the fees are reasonable. *See In re North (Dutton Fee Application)*, 11 F.3d 1075, 1077-82 (D.C. Cir., Spec. Div., 1993) (per curiam). The petitioner "bears the burden of establishing all elements of his entitlement." *In re North (Reagan Fee Application)*, 94 F.3d 685, 690 (D.C. Cir., Spec. Div., 1996) (per curiam). The primary area of contention among the parties involved concerns whether or not Nelvis has satisfied the "but for" requirement.

We have in the past held that "[a]ll requests for attorneys' fees under the Act must satisfy the 'but for' requirement of" the Act. *In re Sealed Case*, 890 F.2d 451, 452 (D.C. Cir., Spec.

Div., 1989) (per curiam). On numerous occasions we have also held that "the contemplation of the legislation is not that subjects of independent counsel investigations will be reimbursed for all legal fees, but only . . . for those legal fees that would not have been incurred by a similarly-situated subject investigated in the absence of the Act." *See In re Madison Guar. Sav. & Loan (Clinton Fee Application),* 334 F.3d 1119, 1123 (D.C. Cir., Spec. Div., 2003) (per curiam).

Nelvis claims that he passes the "but for" test for two reasons. First, he argues that he would not have been investigated but for the requirements of the IC statute because the investigation of the Lewinsky matter, which led to the investigation of him, only occurred as a result of the IC investigation that was already under way. In other words, he is claiming that if there had not been an ongoing investigation of Clinton by the IC, then an investigation of the Lewinsky matter would never have been undertaken because "no federal prosecutor would have undertaken an investigation of adultery or sexual relations between consenting adults in connection with a private civil case." Moreover, Nelvis notes that after threatening him with prosecution the IC never indicated his intent not to prosecute. A non-independent counsel prosecutor, according to Nelvis, even if he or she had undertaken an investigation of the matter, would have notified him when the decision not to prosecute had been made, and therefore his "counsel might 'mitigate damages' by not preparing for the promised prosecution."

Nelvis further claims that he passes the "but for" test in that "there are unique factual circumstances specific to [his] status that, but for the Independent Counsel Act, would have permitted an early termination of the investigation or otherwise would not have subjected [him] to the fees for which he petitions." These special circumstances, Nelvis asserts, involved "the practice

within the Office of the United States Attorney for the District of Columbia routinely to refer criminal cases involving military service members to the respective services for disposition pursuant to military jurisdiction." As such referral would have entitled him to appointed military counsel for representation, Nelvis argues that an investigation of the matter by the U.S. Attorney instead of an independent counsel "would have substantially reduced or eliminated the attorneys' fees incurred by [him] in this case." In support of his claim, Nelvis has submitted the affidavits of two former military attorneys who both state that in their experience it was the routine practice of the U.S. Attorney for the District of Columbia "to refer cases involving serious misconduct by military personnel committed in the District of Columbia to the local military installation commander for disposition."

In response to these claims, the IC takes issue first with Nelvis's characterization of the IC's investigation of the Lewinsky matter as one which concerned only private consensual sexual relations. The IC notes that the investigation instead involved allegations of perjury and obstruction of justice. And because these are crimes routinely investigated and prosecuted by the Department of Justice, the IC asserts that the matter would have been investigated even in the absence of the IC statute.

The IC also disputes Nelvis's claim that, had a regular prosecutor handled the matter, his case would have been referred to the military for prosecution and consequently no attorneys' fees would have been incurred for his defense. First, the IC argues that it is "unclear that Navy personnel are suspected of perjuring themselves during grand jury investigations with sufficient frequency that the U.S. Attorneys' office could have established a usual procedure." But in any event, according to the IC, Nelvis's involvement was initially as a witness, as the IC

believed he possessed relevant and important evidence concerning the matter. It was only after "the OIC prosecutors believed that Nelvis had chosen to lie and he failed to produce required evidence" that he was made a subject, and the IC asserts that "Nelvis has offered no evidence that such conduct would ever, let alone routinely, be immediately transferred to the Navy for further disposition."

In its evaluation, the DOJ also argues that Nelvis has not passed the "but for" test. Like the IC, the DOJ asserts that Nelvis mischaracterizes the nature of the Lewinsky investigation when he claims that no ordinary prosecutor would have undertaken it because it was only a matter of adultery or sexual relations between consenting adults in connection with a private civil matter. The DOJ states that instead the IC's investigation of the matter concerned serious and credible allegations of perjury and obstruction of justice, and that with this in mind, "Nelvis has failed to meet his burden of demonstrating that there would have been no investigation of the underlying matter in the absence of the Independent Counsel Act."

As to Nelvis's claim that an ordinary prosecutor would have transferred his case to the military authorities for disposition, thus avoiding attorneys' fees, the DOJ implies that a regular federal prosecutor would in fact have declined such a transfer. The DOJ makes this assertion based on Nelvis having "played a relatively small part in a much larger investigation into potential wrongdoing by the President, Ms. Lewinsky, and others, regarding matters not associated with the military."

\* \* \* \* \* \* \* \* \*

After considering the positions of the parties we find that Nelvis has not satisfied the "but for" requirement. With respect to his first claim that in the absence of the Act the investigation of the Lewinsky matter would never have taken place because

it involved only allegations of sexual relations between Lewinsky and the President, we had an opportunity to detail the seriousness of the charges involved when we considered the fee reimbursement request of Lewinsky herself:

> the underlying allegations were that Lewinsky lied under oath in a pending lawsuit against the President of the United States; that she was planning to lie again and had encouraged others to lie; that she had spoken to the President and an associate of the President about the matter; and, at least implicitly, that the President and his associate may themselves have been involved in the wrongdoing.

*In re Madison Guar. Sav. & Loan (Lewinsky Fee Application)*, 352 F.3d 437, 445 (D.C. Cir., Spec. Div., 2003) (per curiam). Nelvis has not addressed these much more weighty allegations, and therefore he has not met his burden of showing that an investigation of them would not have been undertaken in the absence of the independent counsel statute.

Nelvis has also not met his burden of showing that a regular federal prosecutor in the District of Columbia would have transferred his case to the military authorities for disposition. It appears that the IC believed that Nelvis was withholding important information concerning the Lewinsky-Clinton relationship, and Nelvis was therefore made a subject and threatened with prosecution in order to induce him to cooperate. Transferring of the case to the military, at that particular stage of the investigation, would not have been a logical step, and there is no apparent reason why any non-independent counsel would not have handled the matter in the same manner. Therefore Nelvis would have incurred the attorneys' fees that he did no matter who conducted the investigation.

\*  \*  \*  \*  \*  \*  \*  \*  \*

Nevertheless, we find that Nelvis is eligible for the attorneys' fees he incurred for reviewing and responding to the IC's Final Report. Section 594 of the Act imposes the requirement that the IC "file a final report with the division of the court, setting forth fully and completely a description of the work of the independent counsel . . . ." 28 U.S.C. § 594(h)(1)(B). The Act further allows that the court make the Report available to those named in it for their review and comment. 28 U.S.C. § 594(h)(2). Consequently, in *In re Olson*, 884 F.2d 1415, 1421 (D.C. Cir., Spec. Div., 1989) (per curiam), we observed that "attorneys' fees incurred by the subject of an investigation in the preparation of comments to the Report are reimbursable where they are reasonably related to the substantive defense." Nelvis is therefore eligible for reimbursement of fees spent on this task. The billing records indicate that his attorney spent 3.5 hours to "Review IC Final Report on Monica Lewinsky investigation;" consequently, Nelvis is entitled to reimbursement in the amount of $700. (3.5 hours @ $200 per hour = $700.)

## Conclusion

For the reasons set forth above, we allow the petition for fees of Bayani C. Nelvis only to the extent of $700.00. Except as herein specifically allowed, the petition is denied.